NO. 07-09-0157-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

MARCH 24, 2011

_____


CODY RAMIREZ, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE


_____

FROM THE 140TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2009-422,891; HONORABLE JIM BOB DARNELL, JUDGE

_____

Before CAMPBELL and HANCOCK and PIRTLE, JJ.


**OPINION**


Following a plea of not guilty, Appellant, Cody Ramirez, was convicted by a jury of aggravated assault of a public servant,[1] with an affirmative finding on use of a deadly weapon.[2] Punishment was assessed by the jury at confinement for life. Presenting two

_____

[1]Tex. Penal Code Ann. § 22.02(b)(2)(B) (West Supp. 2010).

[2]At the time of the offense, Appellant was sixteen years old. The trial court did take judicial notice of the juvenile certification in the underlying case.

issues, Appellant questions whether (1) the trial court constructively denied his right to testify in violation of due process by indicating an intent to allow improper impeachment evidence and (2) the trial court erred in not submitting a jury charge that properly instructed it regarding the affirmative defense of duress.[3]  We affirm.

## Background Facts

At approximately 4:00 a.m. on December 5, 2006, Officers Michael Chavez and Michael Matsik, in separate patrol cars, responded to an aggravated robbery at a local gaming establishment.  Per procedure, they retrieved their patrol rifles from the trunks of their respective patrol cars.  While Officer Chavez was loading his rifle, two suspects wearing black ski masks and hooded sweatshirts exited the back door of the gaming establishment and began running for the east gate.  Although ordered to the ground, the two suspects began to flee in opposite directions.  Officer Chavez gave chase to the suspect running south, while Officer Matsik gave chase to the other suspect.  At the time, both officers observed a small gray or silver car parked in the alley.

Officer Matsik temporarily lost sight of his suspect when the suspect cut through a fence.  A female bystander pointed Officer Matsik in the suspect's direction.  Although the area was dark, Officer Matsik observed a silhouette followed by a muzzle flash.[4]  He immediately dropped to the ground as multiple shots were fired.  He picked himself up to return fire but noticed the safety on his rifle was still engaged.  The suspect had retreated over a gate into a residential area, and Officer Matsik could not get a clear shot.

---

[3]See Tex. Penal Code Ann. § 8.05 (West 2003).

[4]Officer Matsik testified that a muzzle flash is a flash that comes from the barrel of a weapon upon firing.

After Officer Chavez heard shots fired, he decided to check on his fellow officer. As he approached, he saw the silver car which he had earlier observed in the alley speed away. Other officers on the scene pursued the car and eventually arrested Appellant. The second suspect, the suspect Officer Chavez had originally pursued, was later found hiding under a door that was leaning up against a building.

After the suspects were arrested, Officer Matsik experienced a burning sensation on his upper thigh. He pulled his left pant leg up and, using the lights of the patrol car, noticed a bullet hole in the lower part of the pant leg toward his ankle. He also had graze wounds on his upper thigh and just above his left wrist. He concluded that bullets were fired in his direction and that contact was made on at least three occasions.

Although Appellant was initially charged in a six-count indictment, the State announced just before trial that it was proceeding only on count VI, the charge of aggravated assault with a deadly weapon against Officer Matsik. After a jury trial, Appellant was convicted and sentenced to life imprisonment.

**I.**     **Issue One--Did the trial court constructively deny Appellant his right to testify by announcing that it would permit the State to cross-examine him with improper impeachment evidence?**

Appellant proceeded to trial on the theory of duress as an affirmative defense. The theory was that Appellant's uncle, Richard Ramirez,[5] coerced him into committing the aggravated robbery and threatened to kill him if he got caught. Ramirez testified that he "masterminded" the robbery at the gaming establishment, provided Appellant with a gun, and threatened his life. He further testified that his instructions to Appellant

---

[5]Richard Ramirez's charges in the aggravated robbery were dismissed in exchange for his plea to capital murder for which he is serving a life sentence without the possibility of parole.

3

included not getting caught or he would have to "deal with" him. His advice to Appellant to evade officers was to "shoot low" and "[g]et away." Richard Ramirez was inside the gaming establishment at the time of the robbery but was not armed at the time and was not near Appellant.

Following Ramirez's testimony, defense counsel advised the trial court that Appellant indicated he wanted to testify and asked that he be properly admonished. Defense counsel's understanding at that time was that Appellant would only be impeached with prior felonies or misdemeanors involving moral turpitude. The prosecutor responded that with the affirmative defense of duress, Appellant would have to accept full responsibility for the crime and that his character and relationship with Richard Ramirez would be explored.

The jury was excused and Appellant took the stand and was admonished by the trial court about the waiver of his right against self-incrimination. After a brief question and answer period, the trial court found that Appellant had freely and voluntarily waived that right. The court then requested that the prosecutor reveal her intended line of questioning.

The prosecutor advised the court that based on the affirmative defense of duress, she intended to explore Appellant's relationship with his uncle which would put Appellant's character at issue. She also expressed her intent to question Appellant on his problems with the juvenile system and possible gang activity.

The trial court ruled that the prosecutor could ask questions on the proposed areas, except for any questions relating to gang activity. Defense counsel sought

4

clarification and the trial court explained that its ruling would permit questions on Appellant's juvenile record and extraneous offenses without limiting those extraneous offenses to prior acts involving moral turpitude.

Defense counsel then asked to confer with Appellant after which he raised the following objection:

> Your Honor, in light of the Court's ruling, allowing the prosecution to go into juvenile records and extraneous offenses, I have spoken with my client, [Appellant], and he now informs me that he does not wish to testify at this point during the guilt - innocence stage.
>
> I wish to state for the record that I am objecting to the Court's ruling, and I would submit that the ruling itself prohibits him from taking the stand under the present circumstances.

Defense counsel's objection was overruled.

By his first issue, Appellant argues that the trial court's ruling constructively denied him the right to testify in his own defense. While acknowledging that Rule 404(b) of the Texas Rules of Evidence allows the admission of other crimes, wrongs or acts for certain limited purposes, Appellant maintains the State did not offer a legitimate limited purpose for the scope of its intended cross-examination. He further maintains the trial court's ruling would have allowed impermissible impeachment evidence regarding Appellant's character. The court's action, he asserts, presented him with a Hobson's choice.

An accused has the right to testify on his own behalf. *See Rock v. Arkansas*, 483 U.S. 44, 49, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987). *See also* Tex. Const. art. I, section 10; Tex. Code Crim. Proc. Ann. art. 38.08 (West 2005). If, however, an accused

5

exercises his right to testify, he is subject to the same rules governing examination and cross-examination as other witnesses. *Brown v. State*, 617 S.W.2d 234, 236 (Tex.Crim.App. 1981). "He may be contradicted, impeached, discredited, attacked, sustained, bolstered up, made to give evidence against himself, cross-examined as to new matter, and treated in every respect as any other witness testifying, except where there are overriding constitutional or statutory prohibitions." (Citations omitted). *Id.*

The decision of an accused whether to testify "seldom turns on the resolution of one factor among many." *New Jersey v. Portash*, 440 U.S. 450, 467, 99 S.Ct. 1292, 59 L.Ed.2d 501 (1979) (Blackmun, J., dissenting). When a defendant chooses not to testify, a reviewing court has no way of knowing whether the State actually would have sought to impeach him with inadmissible evidence of extraneous offenses or prior convictions. *Luce v. United States*, 469 U.S. 38, 42, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984). In *Luce*, the Supreme Court adopted the rule that "[t]he preferred method for raising claims such as [Appellant's] would be for the defendant to take the stand and appeal a subsequent conviction . . . . Only in this way may the claim be presented to a reviewing court in a concrete factual context." *Id.* at 43 (citing *Portash*, 440 U.S. at 462 (Powell, J., concurring)). The Supreme Court held that because Luce did not testify, he failed to preserve his claim of improper impeachment evidence. *Luce*, 469 U.S. at 43.

In *Jackson v. State*, 992 S.W.2d 469, 479-80 (Tex.Crim.App. 1999), the Court rejected an argument similar to the one being made here, i.e., that the trial court effectively denied the defendant his right to testify by refusing to limit the State's cross-examination. In *Jackson*, the defendant wanted to testify during the punishment phase of his capital murder case, for the limited purpose of raising mitigation issues. He

6

sought to foreclose cross-examination about extraneous offenses. *Jackson*, 992 S.W.2d at 479. Because the defendant failed to testify the Court found the reasoning of *Luce* to be applicable and held that he failed to preserve error for review. *Id.* at 480.

In the present case, after conferring with his counsel, Appellant chose not to testify. Without his testimony, this Court cannot speculate on whether the prosecutor would have cross-examined Appellant on matters outside the scope of permissible impeachment. Notwithstanding that the prosecutor had announced certain areas which she intended to explore on cross-examination, without Appellant's testimony, this Court is at a disadvantage in attempting to determine (1) the precise nature of the State's questions, (2) Appellant's actual evidentiary objection, (3) whether the trial court's ruling would have remained the same or would have changed as the case unfolded, (4) Appellant's responses to the State's questions, and (5) whether any resulting error in permitting impermissible evidence would have been harmless. *See Luce*, 469 U.S. at 41. We conclude that, just as in *Luce* and *Jackson*, Appellant's objection regarding the trial court's "prospective ruling" regarding possible impeachment evidence preserved nothing for review. Issue one is overruled.

II.     **Issue Two-- Did the trial court err in failing to submit a jury charge that properly instructed the jury regarding the affirmative defense of duress?**

Duress is an affirmative defense if the actor engaged in proscribed conduct because he was compelled to do so by threat of imminent death or serious bodily injury to himself or another. Tex. Penal Code Ann. § 8.05(a) (West 2003). A person is compelled to act within the meaning of the duress defense only if confronted by force or threat of force that would render a person of reasonable firmness incapable of resisting

7

the pressure. *Id.* at (c). Whether a "person of reasonable firmness" would be incapable of resisting the pressure to engage in proscribed conduct is an objective inquiry rather than a subjective one. *See Wood v. State*, 18 S.W.3d 642, 651 n.8 (Tex.Crim.App. 2000).

Appellant does not complain about the abstract or application portions of the court's charge as they pertain to the affirmative defense of duress. Rather, he specifically maintains that the following paragraph improperly instructed the jury that a special finding was required for or against the affirmative defense of duress:

> If, however, after viewing the facts from the defendant's standpoint, you do not find by a preponderance of evidence that defendant's participation in the offense, if any, was compelled by such threat of force by Richard Ramirez as would render a person of reasonable firmness incapable of resisting the pressure thereof, then you will find against the defendant on his defense of duress.

During the charge conference, defense counsel objected to inclusion of the above-quoted paragraph. Counsel's objection was overruled.

Appellant argues the charge is a misstatement of the law because it improperly instructs the jury to find "against the defendant" if it does not find the affirmative defense of duress by a preponderance of the evidence. We disagree.

First, the objected to portion of the court's charge does not instruct the jury to find against the defendant on the issue of guilt or innocence if it does not find the affirmative defense of duress by a preponderance of the evidence. Instead, in such a circumstance, it only instructs the jury to find against the defendant on the affirmative defense issue of duress. Therefore, Appellant's argument lacks substantive merit.

8

Secondly, assuming *arguendo*, that the trial court's inclusion of the objected-to paragraph was error, Appellant was not harmed.[6]  The function of the jury charge is to instruct the jury on the law applicable to the case.  Tex. Code Crim. Proc. Ann. art. 36.14 (West 2007); *Dinkins v. State*, 894 S.W.2d 330, 339 (Tex.Crim.App. 1995), *cert. denied*, 516 U.S. 832, 116 S.Ct. 106, 133 L.Ed.2d 59 (1995).  The charge consists of an abstract statement of the law and the application paragraph(s).  *See Plata v. State*, 926 S.W.2d 300, 302 (Tex.Crim.App. 1996), *overruled on other grounds*, *Malik v. State*, 953 SW.2d 234, 239 (Tex. 1997).  When reviewing the charge for alleged error, we examine the charge as a whole, considering the relationship between the abstract and application portions of the charge.  *King v. State*, 189 S.W.3d 347, 364 (Tex.App.--Fort Worth 2006, no pet.).

To avail oneself of the affirmative defense of duress, the accused must admit to having engaged in the proscribed conduct.  *See Giesberg v. State,* 984 S.W.2d 245 (Tex.Crim.App. 1998), *cert. denied,* 525 U.S. 1147, 119 S.Ct. 1044, 143 L.Ed.2d 51 (1999); *Timms v. State*, 2009 Tex.App. LEXIS 10042, at *3 (Tex.App.--Amarillo April 22, 2009, pet. ref'd).  Forcing the State to carry its burden of proof is not an admission of the charged offense.  *Id.* at *5.  Having failed to admit to the offense, Appellant was not harmed by any alleged error in the manner in which the defensive issue of duress was presented to the jury.

---

[6]The degree of harm necessary under *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. 1984), is *some* harm because the paragraph complained of was objected to and the trial court overruled the objection.

Furthermore, in order to meet the requirements of duress, the threat of death or serious bodily injury must be *imminent.*[7] (Emphasis added). An imminent threat has two components of immediacy. *Anguish v. State*, 991 S.W.2d 883, 886 (Tex.App.--Houston [1st Dist] 1999, pet. ref'd). First, the person making the threat must intend and be prepared to carry out the threat immediately. Second, carrying out the threat must be predicated upon the threatened person's failure to commit the charged offense immediately. *Id.* The Texas Court of Criminal Appeals has determined that a threat of death at some indefinite time in the future is insufficient to satisfy the requirement of imminence. *Blount v. State*, 542 S.W.2d 164, 166 (Tex.Crim.App. 1976).

Part of the State's theory in opposition to the defense of duress was that Appellant was not acting under duress because he was not in imminent danger at the time of the aggravated robbery. The testimony elicited from Ramirez was that if Appellant was apprehended, he would "deal with" him when he tried to get him out of jail. He explained that he would carry out his threat at some time in the future. When asked again, "you would have dealt with [Appellant] at some point in the future," Ramirez replied, "[o]f course." Ramirez also answered "no" when asked if he was within "killing range" of Appellant at the time of the robbery. Because Ramirez's threat to Appellant was a future threat, there was no threat of imminent death or serious bodily injury.

---

[7]Appellant did not testify. This Court has found that one asserting the affirmative defense of duress must admit to having engaged in the proscribed conduct. *See Timms v. State*, 2009 Tex.App. LEXIS 10042, at *3 (Tex.App.--Amarillo April 22, 2009, pet. ref'd). Forcing the State to carry its burden of proof is not an admission of the charged offense. *Id.* at *5.

Based upon the record before us, we conclude that the trial court did not commit reversible error by failing to submit a jury charge that properly instructed the jury regarding the affirmative defense of duress.   Issue two is overruled.

**Reformation of Judgment**

In reviewing the record, it has come to this Court's attention that the trial court's judgment contained in the clerk's record includes clerical errors.  The summary portion of the judgment reflects that Appellant entered a plea of guilty to the charged offense while the reporter's record reveals that Appellant in fact entered a plea of not guilty after the indictment was read.  Additionally, the "Statute for Offense" reflects that Appellant was convicted under "§ 22.02(b)(2)."  However, aggravated assault of a public servant is found at section 22.02(b)(2)(B) of the Texas Penal Code.

This Court has the power to modify the judgment of the court below to make the record speak the truth when we have the necessary information to do so.  Tex. R. App. P. 43.2(b).  *Bigley v. State*, 865 S.W.2d 26, 27-28 (Tex.Crim.App. 1993).  Appellate courts have the power to reform whatever the trial court could have corrected by a judgment *nunc pro tunc* where the evidence necessary to correct the judgment appears in the record.  *Ashberry v. State*, 813 S.W.2d 526, 529 (Tex.App.--Dallas 1991, pet. ref'd).  The power to reform a judgment is "not dependent upon the request of any party, nor does it turn on the question of whether a party has or has not objected in the trial court."  *Id.* at 529-30.

The record clearly shows that Appellant entered a plea of not guilty to the indictment and that he was convicted pursuant to section 22.02(b)(2)(B) of the Texas

Penal Code.  Thus, we modify the trial court's judgment to reflect a plea of "not guilty" and also modify the "Statute for Offense" to reflect "§ 22.02(b)(2)(B)" in the summary portion of the judgment.  As modified, the trial court's judgment is affirmed.


                                        Patrick A. Pirtle
                                             Justice


Publish.