

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-17-00197-CR
_____

JEREMY LYNN FIGUEREDO, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 69th District Court
Hartley County, Texas
Trial Court No. 1232H; Honorable Richard Dambold, Senior Judge Presiding by Assignment

January 4, 2019

## MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

Appellant, Jeremy Lynn Figueredo, was convicted by a jury of the third-degree felony offense of evading arrest.[1] The potential range of punishment was enhanced by a prior felony conviction.[2] Following a plea of "true" to the enhancement, the trial court

---

[1] TEX. PENAL CODE ANN. § 38.04(b)(2)(A) (West 2016).

[2] As enhanced, the offense was punishable as a felony of the second degree. TEX. PENAL CODE ANN. § 12.42(a) (West Supp. 2018).

assessed his sentence at ten years confinement in the Institutional Division of the Texas Department of Criminal Justice. By a single issue, Appellant contends the evidence was insufficient to support the jury's verdict because he was under duress at the time he committed the offense. We affirm.

BACKGROUND

Appellant was charged by indictment with the felony offense of evading arrest while using a motor vehicle arising out of events occurring on July 11, 2014. On that day, Scott White, fire chief of the Hartley County Fire Department, observed a suspicious vehicle near the "Weatherford" residence. White called central dispatch, reported the license number of the vehicle, and requested that a sheriff's deputy come to his location to investigate. Approximately fifteen to twenty minutes later, Hartley County Deputy Penny Lauder arrived at the scene in her marked patrol vehicle. She was in full uniform. Deputy Lauder spoke with White and confirmed that the vehicle near the Weatherford residence was the suspicious vehicle he had reported. After observing the activities at the Weatherford residence, Deputy Lauder suspected the house was being burglarized.

About that time, White observed Appellant jump over the fence, approximately twenty feet from the vehicle being watched, and run towards that vehicle. Deputy Lauder yelled, "Hartley County Sheriff's Office, let me see your hands." Appellant did not verbally respond, but he did put his hand inside his vest. In response, Deputy Lauder drew her service weapon and pointed it at Appellant. White, a concealed-carry license holder, also drew his personal weapon. Appellant then responded by yelling, "don't shoot, don't shoot."

2

Without responding to Deputy Lauder's commands to get on the ground and put his hands up, Appellant suddenly ran to the suspect vehicle and jumped into the driver's seat. The vehicle began quickly backing up. With Deputy Lauder's approval, White retrieved a rifle from her patrol vehicle and started shooting (unsuccessfully) at the tires of Appellant's vehicle. The vehicle came to a stop and then began moving forward towards Deputy Lauder and White. As the vehicle passed, using his personal weapon, White again shot at the back tires of the vehicle. This time he managed to hit the back windows and rear of the fleeing vehicle.

Deputy Lauder gave chase in her patrol vehicle and White followed in his personal pickup once he was able to unhitch it from a trailer. Deputy Lauder testified that during the chase—which lasted five miles at speeds up to eighty miles per hour—she had her emergency lights flashing. White's vehicle was also equipped with flashing red and white lights which he activated during the chase. Deputy Lauder eventually encountered the abandoned suspect vehicle, stopped in a cornfield. Subsequent investigation revealed that the vehicle was registered to Jim Figueredo. At this point, other law enforcement officers began arriving on the scene.

Detective James Webb, of the Dalhart Police Department, subsequently conducted a recorded interview with Appellant. During that interview, Appellant stated that after he fled from the Weatherford residence, he could see Deputy Lauder's flashing red and blue lights, and possibly White's red and white lights. Appellant acknowledged that he knew what he did was wrong but that he got scared when the shots were fired and just wanted to get out of there. He also stated that his judgment was impaired

3

because he had been up for five days doing methamphetamine, and that after abandoning his vehicle, he had hidden in the cornfield.

At trial, Appellant elected to testify. His version of the events was only slightly different from Deputy Lauder's and White's testimonies. Primarily, Appellant painted the picture that he did not provoke the original gun play and that he only fled because he was afraid that he would be shot and killed. A dashcam video of the events at the Weatherford residence was played for the jury.

STANDARD OF REVIEW

The only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense the State is required to prove beyond a reasonable doubt is the standard set forth in *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). In determining whether the evidence is legally sufficient to support a conviction, a reviewing court considers all the evidence in the light most favorable to the verdict and determines whether, based on that evidence and reasonable inferences to be drawn therefrom, a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017).

The jury is the sole judge of the credibility of the witnesses and the weight to be given to their testimonies, and a reviewing court must defer to those determinations and not usurp the jury's role by substituting its judgment for that of the jury. *Id.* (citing *Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012)). The duty of a

4

reviewing court is simply to ensure that the evidence presented supports the fact finder's verdict and that the State has presented a legally sufficient case of the offense charged. *Id.* When a reviewing court is faced with a record supporting contradicting conclusions, the court must presume the fact finder resolved any such conflicts in favor of the verdict, even when not explicitly stated in the record. *Id.* "Under this standard, evidence may be legally insufficient when the record contains no evidence of an essential element, merely a modicum of evidence of one element, or if it conclusively establishes a reasonable doubt." *Id.* (quoting *Britain v. State*, 412 S.W.3d 518, 520 (Tex. Crim. App. 2013)). Sufficiency of the evidence is measured against "the elements of the offense as defined by the hypothetically correct jury charge for the case." *See Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).

EVADING ARREST WITH A MOTOR VEHICLE

A person commits the third-degree felony offense of evading arrest with a motor vehicle if he intentionally flees from a person whom he knows is a peace officer attempting lawfully to arrest or detain him and he uses a motor vehicle while he is in flight. *See* TEX. PENAL CODE ANN. § 38.04(a), (b)(2)(A) (West 2016). *See also Moorhead v. State*, 483 S.W.3d 246, 247-48 (Tex. App.—Texarkana 2016, no pet.) (discussing the confusion created by two 2011 amendments and concluding that evading arrest or detention with a vehicle is a third degree felony). Essentially, a person commits an offense under section 38.04 if he knows a police officer is attempting to arrest or detain him but nonetheless refuses to yield to a police show of authority. Therefore, the essential elements of the offense are that: (1) a person, (2) intentionally, (3) flees, (4) from a person, (5) he knows is a peace officer, (6) attempting to lawfully arrest or detain him, and (7) the actor uses a

5

vehicle while in flight. As discussed below, Appellant concedes the State established each of these elements.

DURESS

Appellant contends the evidence was insufficient to support the jury's verdict of guilty because he was under duress and in imminent fear for his life at the time he committed the offense, which necessitated and compelled him to flee in order to save his life. While he concedes the jury was properly instructed on this affirmative defense, he contends no reasonable trier of fact could have rejected his defense since he was placed in duress by a non-police officer's (White's) engagement in the fray by shooting at him.

As to the matter of duress, Texas Penal Code section 8.05 provides that "[i]t is an affirmative defense to prosecution that the actor engaged in the prescribed conduct because he was compelled to do so by threats of imminent death or serious bodily injury to himself or others." *See* TEX. PENAL CODE ANN. § 8.05(a) (West 2011). "Compulsion within the meaning of this section exists only if the force or threat of force would render a person of reasonable firmness incapable of resisting pressure." § 8.05(c). The affirmative defense of duress is not available if the actor "intentionally, knowingly, or recklessly placed himself in a situation in which it was probable that he would be subjected to compulsion." § 8.05(d).

Duress is an affirmative defense that excuses conduct of the accused that would otherwise expose him to criminal responsibility. *Ramirez v. State*, 336 S.W.3d 846, 851 (Tex. App.—Amarillo 2011, pet. ref'd). As such, it is a "confession-and-avoidance" or "justification" type of defense requiring the accused to admit criminal responsibility. *Id.*

6

Because an accused bears the burden of establishing an affirmative defense by a preponderance of the evidence, an appellate court reviews a jury's decision to reject an affirmative defense for both legal and factual sufficiency. *Butcher v. State,* 454 S.W.3d 13, 20 (Tex. Crim. App. 2015).

In a legal sufficiency review of an affirmative defense, an appellate court must consider the entire record to determine if the jury's verdict is supported by any evidence favorable to the verdict while disregarding all evidence to the contrary unless a reasonable juror could not. *See Matlock v. State,* 392 S.W.3d 662, 668-70 (Tex. Crim. App. 2013). The jury's verdict rejecting an affirmative defense should not be overturned unless the evidence conclusively proves the affirmative defense, and "no reasonable jury was free to think otherwise." *Id.* at 670.

Concerning factual sufficiency, in reviewing a jury's decision to reject an affirmative defense, the courts must review the evidence in a neutral light. Here, the jury's verdict rejecting an affirmative defense is subject to being overruled only if "after setting out the relevant evidence supporting the verdict, the [appellate] court clearly states why the verdict is so against the great weight of the evidence as to be manifestly unjust, conscience-shocking, or clearly biased." *Butcher,* 454 S.W.3d at 20 (quoting *Matlock,* 392 S.W.3d at 670).

ANALYSIS

Here, Appellant did not specifically admit criminal responsibility, and therefore, it could be said that he failed to raise the affirmative defense of duress. He did, however, attempt to raise that defense through the cross-examination of the State's witnesses, and

7

he was able to convince the trial judge to submit an instruction on the issue. Accordingly, assuming the defense was raised, we will address the legal and factual sufficiency of the evidence to support the jury's verdict.

First, as to legal sufficiency, the evidence was legally sufficient to support the jury's rejection of Appellant's claim of duress. Appellant does not dispute that he consciously disregarded a lawful instruction from a law enforcement official, Deputy Lauder, that he stop and submit to her legitimate show of authority. According to the State's version of the facts, at the time those lawful commands were given, no shots had been fired and Appellant was under no compulsion to do anything other than to submit. Only after Appellant began to flee were any shots fired. Therefore, considering the evidence in a light favorable to the verdict, despite the acknowledged command to stop, Appellant commenced the offense of evading by intentionally jumping into his vehicle and accelerating in an attempt to evade detention. While it is likewise undisputed that at some point White did begin to fire upon Appellant's vehicle, from a legal sufficiency perspective it is equally clear that the offense of evading had commenced before any shots (Lauder's or White's) were fired.

Furthermore, the evidence was factually sufficient to support the jury's rejection of Appellant's affirmative defense because, considering all the evidence in a neutral light, the jury's decision to reject that defense was not so against the great weight and preponderance of the evidence as to be "manifestly unjust," "conscience-shocking," or "clearly biased." Because a reasonable person in Appellant's situation would have stopped and submitted to the lawful show of authority by Deputy Lauder, we cannot say

8

that the jury's decision to reject his affirmative defense of duress was wrong.  Accordingly, Appellant's sole issue is overruled.

CONCLUSION

The trial court's judgment is affirmed.

Patrick A. Pirtle
Justice

Do not publish.