

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-17-00421-CR
No. 07-17-00428-CR
No. 07-17-00429-CR
No. 07-17-00430-CR

_____

JIMMIE KYLE ANDERSON, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 46th District Court
Hardeman County, Texas
Trial Court No. 4360; Honorable Dan Mike Bird, Presiding

March 22, 2019

## MEMORANDUM OPINION

Before QUINN, C.J., and PIRTLE and PARKER, JJ.

Following open pleas of guilty to three counts of indecency with a child by sexual contact and one count of aggravated sexual assault of a child, Appellant, Jimmie Kyle Anderson, was convicted on all counts. After electing to have the jury assess his

punishment, he was sentenced to fifteen years for each count of indecency with a child by sexual contact[1] and ninety-nine years for aggravated sexual assault of a child.[2]

By a sole issue, Appellant maintains the trial court committed reversible error by ordering his sentences to run consecutively in violation of the Eighth Amendment to the United States Constitution.  We affirm.

PROCEDURAL FUBAR[3]

As a preliminary matter, it is essential that we untangle the confusion created by the trial court's unexplained renumbering of the offenses—not once, but three times—and its errors in the drafting of the final written judgments, making this case an excellent example of why separate charges should be brought as separate indictments, resulting in separate judgments.  As originally indicted, Appellant was charged with five offenses. Counts I and II charged Appellant with aggravated sexual assault of Jane Doe and Sara Doe, respectively, and the remaining three counts charged him with indecency with a child by sexual contact with Jane Doe, Sara Doe, and Mary Doe, respectively.  Count II was subsequently dismissed.  When the case was presented to the jury and sentence was pronounced in open court, Count I remained the aggravated sexual assault charge as to Jane Doe; the dismissed Count II became the indecency with a child by sexual contact charge as to Jane Doe (formerly Count III); Count III became the indecency with

---

[1] TEX. PENAL CODE ANN. § 21.11(a)(1) (West Supp. 2018).  An offense under this section is a felony of the second degree.

[2] TEX. PENAL CODE ANN. § 22.021(a)(2)(B) (West Supp. 2018).  An offense under this section is a felony of the first degree.

[3] Fubar: [fo͞oˌbär] *adj.*; A military acronym indicating that something is out of working order; seriously, perhaps irreparably damaged.  *Oxford English Dictionary* (third ed.). Oxford University Pres. 2005.

2

a child by sexual contact as to Sara Doe (formerly Count IV); Count IV became the indecency with a child by sexual contact as to Mary Doe (formerly Count V); and Count V disappeared.  When the written judgments were finally prepared, Count I somehow became the indecency with a child by sexual contact as to Jane Doe; Count II became the indecency with a child by sexual contact as to Sara Doe; Count III became the indecency with a child by sexual contact as to Mary Doe; and Count IV became the aggravated sexual assault charge.  This means that at four different stages (indictment, jury charge, pronouncement of sentence, and execution of written judgments), the trial court referred to the various charges using three different "count" numbering systems.  This confusion should have been avoided and it could have been by simply using a separate indictment as to each offense.

And, if that wasn't confusing enough, contrary to the trial court's oral pronouncement of sentences, the trial court's written judgments incorrectly ordered that Appellant's sentences for indecency with a child be served consecutively to one another, but not consecutively to the aggravated sexual assault sentence.  Finally, as drafted, the written judgments as to Counts I and II create an impossible sentence because they provide that the sentence for that particular offense "shall begin" when the sentence for that same offense has "terminated," creating an incongruous circuity.

A chart of the four convictions, arranged by the count number used in the final written judgments, is as follows:

3

| COUNT PER JUDGMENT | CHARGE | PENAL CODE | SENTENCE PER JUDGMENT | SENTENCE PER ORAL PRONOUNCEMENT[4] |
|---|---|---|---|---|
| Count I | Indecency with a child by sexual contact (Jane Doe) | TEX. PENAL CODE ANN. § 21.11(a)(1) (West Supp. 2018) | Fifteen years<br><br>Consecutive to Counts I, II, and III | Fifteen years<br><br>Consecutive to Count I |
| Count II | Indecency with a child by sexual contact (Sara Doe) | TEX. PENAL CODE ANN. § 21.11(a)(1) (West Supp. 2018) | Fifteen years<br><br>Consecutive to Counts I and II | Fifteen years<br><br>Consecutive to Counts I and II |
| Count III | Indecency with a child by sexual contact (Mary Doe) | TEX. PENAL CODE ANN. § 21.11(a)(1) (West Supp. 2018) | Fifteen years<br><br>Consecutive to Count I | Fifteen years<br><br>Consecutive to Counts I, II, and III |
| Count IV | Aggravated sexual assault of a child | TEX. PENAL CODE ANN. § 22.021(a)(2)(B) (West Supp. 2018) | Ninety-nine years<br><br>Concurrent | Ninety-nine years |

Because an understanding of the proper judgment is critical to our analysis, we will first address the reformation of the judgments to reflect the sentences as pronounced in open court.

REFORMATION OF THE JUDGMENTS

As we have indicated above, in its submission of the case to the jury, the trial court renumbered the "counts," with Counts I, II, and III becoming the indecency with a child by sexual contact offenses and Count IV becoming the aggravated sexual assault offense. Because the trial court used a different numbering system when it pronounced each sentence, it is necessary to reform the judgments to conform to the sentence pronounced.

---

[4] This is particularly confusing because, at the time of the trial court's oral pronouncement, it was referring to Count I as Count II, Count II as Count III, and Count III as Count IV, and Count IV as Count I.

4

This court has the power to reform the judgment of the court below to make the record speak the truth when we have the necessary information to do so. TEX. R. APP. P. 43.2(b). *Ramirez v. State*, 336 S.W.3d 846, 852 (Tex. App.—Amarillo 2011, pet. ref'd) (citing *Bigley v. State*, 865 S.W.2d 26, 27-28 (Tex. Crim. App. 1993)). Appellate courts have the power to reform whatever the trial court could have corrected by a judgment *nunc pro tunc* where the evidence necessary to correct the judgment appears in the record. *Asberry v. State*, 813 S.W.2d 526, 529 (Tex. App.—Dallas 1991, pet. ref'd). The power to reform a judgment is "not dependent upon the request of any party, nor does it turn on the question of whether a party has or has not objected in the trial court." *Id.* at 529-30.

It is well-settled that when there is a conflict between the oral pronouncement of sentence in open court and the sentence set out in the written judgment, the oral pronouncement controls. *Burt v. State,* 445 S.W.3d 752, 757 (Tex. Crim. App. 2014); *Taylor v. State,* 108 S.W.3d 497, 500 (Tex. Crim. App. 2004); *Thompson v. State,* 108 S.W.3d 287, 290 (Tex. Crim. App. 2003). The solution in such a situation is to reform the written judgment to conform to the trial court's oral pronouncement. *Id.*

Here, the record reflects that, immediately following the assessment of the ninety-nine year sentence with respect to the aggravated sexual assault charge, the trial court said nothing with respect to whether that sentence would be served concurrently or consecutively. Because the trial court did not otherwise provide, this sentence must be served concurrent to any other sentence. In that regard, the written judgment as to Count IV is correct.

Immediately following the assessment of the fifteen-year sentence with respect to the indecency with a child by sexual contact as to Jane Doe, the trial court stated, "[t]hat sentence would begin from when the sentence on Count I was terminated." Because, at that point, Count I was the aggravated sexual assault charge, the trial court effectively ordered that the sentence could not begin until that sentence (now Count IV) was completed. In order to correct this error, we reform the judgment in Count I (indecency with a child by sexual contact) to reflect: "This sentence shall begin when the judgment and sentence in Cause No. 4360 (Count IV) has ceased to operate."

Immediately following the assessment of the fifteen-year sentence with respect to the indecency with a child by sexual contact as to Sara Doe, the trial court stated, "[t]hat sentence will begin . . . when the sentences on Count I and II are terminated." Because, at that point, Count I was the aggravated sexual assault charge and Count II was the indecency with a child by sexual contact as to Jane Doe, the trial court effectively ordered that the sentence could not begin until the sentences (now Counts I and IV) were completed. In order to correct this error, we reform the judgment in Count II (indecency with a child by sexual contact) to reflect: "This sentence shall begin when the judgment and sentence in Cause No. 4360 (Count I) and Cause No. 4360 (Count IV) have ceased to operate."

Immediately following the assessment of the fifteen-year sentence with respect to the indecency with a child by sexual contact as to Mary Doe, the trial court stated, "[t]his sentence . . . will begin when the sentences on Count I, II and III are terminated." Because, at that point, Count I was the aggravated sexual assault charge, Count II was the indecency with a child by sexual contact as to Jane Doe, and Count III was the

6

indecency with a child by sexual contact as to Sara Doe, the trial court effectively ordered that the sentence could not begin until the sentences (now Counts I, II, and IV) were completed. In order to correct this error, we reform the judgment in Count III (indecency with a child by sexual contact) to reflect: "This sentence shall begin when the judgment and sentence in Cause No. 4360 (Count I), Cause No. 4360 (Count II) and Cause No. 4360 (Count IV) have ceased to operate."

BACKGROUND

After Appellant pleaded guilty to four counts of the indictment, a jury heard punishment evidence. Appellant's ex-wife testified that she and Appellant met online in 2007 and they married in 2008. In 2013, they became foster parents and over time, they fostered twenty-five children. In 2017, they had six children in the home ranging in age from four months to ten years.

In May 2017, Appellant's wife went into a bedroom to check on some of the children and discovered one of the girls had her pants unzipped. When questioned about it, the five-year-old child responded that she and two other children were playing a game Appellant played with them.[5] She described the game as one where "daddy puts that thing in our butts." When questioned further, she indicated the "thing" she was referring to was Appellant's penis. More questioning by Appellant's wife led one of the girls to say that Appellant sometimes puts his "body part" in her mouth causing her to choke.

---

[5] Two of the girls were five years old and one was three.

Appellant's wife told the children they were going for a drive so they could be out of the house when Appellant arrived home. She took them to the foster care agency in Wichita Falls and the police were called. An investigation ensued.

Texas Ranger Rickey Brown was asked to assist in the investigation. He assisted Appellant's wife in making a voluntary phone call to Appellant to confront him about the allegations. The call was recorded. After his initial denials, Appellant admitted abusing the girls and expressed remorse. At a later date, he agreed to waive his rights and be interviewed by Ranger Brown. Speaking candidly and remorsefully, Appellant described what he did to the girls. The audio recordings of Appellant's phone call with his wife and of his interview with Ranger Brown were played for the jury.

During the punishment hearing, three former foster children who stayed with Appellant and his wife in 2014, also testified. These three children were sisters, and at the time of the punishment hearing, they were eleven, twelve, and thirteen years of age. Each of them testified they were sexually assaulted by Appellant. One of the sisters testified that he "raped" her "[e]very day for, like, a week or more." Another sister testified he "bribed us with money . . . if we did what he wanted . . . ." The third sister testified that Appellant made her do uncomfortable things when his wife was not around such as "drink his sperm and basically have sex with him." According to them Appellant threatened to kill them if they told anyone of the abuse.

During his case-in-chief, Appellant presented the testimony of his sister, his father and mother, and a former co-worker. They testified to his favorable character traits, his childhood activities, and his dependability as an employee.

By his sole issue, he asserts his consecutive sentences constitute cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution. For the reasons discussed below, we disagree.

APPLICABLE LAW

The Eighth Amendment prohibits excessive bail or fines as well as cruel and unusual punishment. U.S. CONST. amend. VIII. This provision is applicable to the states through the Fourteenth Amendment. *Furman v. Georgia*, 408 U.S. 238, 239 92 S. Ct. 2726, 33 L. Ed. 2d 346 (1972).

A complaint that punishment is cruel and unusual must be preserved for review. *Sharp v. State*, No. 07-17-00128-CR, 2017 Tex. App. LEXIS 11295, at *2 (Tex. App.—Amarillo Dec. 5, 2017, no pet.) (mem. op., not designated for publication). Constitutional rights, including the right to be free from cruel and unusual punishment, may be waived by failure to object. *See Castaneda v. State*, 135 S.W.3d 719, 723 (Tex. Crim. App. 2003). To avoid procedural default on appeal on a punishment issue, a defendant must complain of the sentence by objection during trial or, if there was no opportunity to object, in a motion for new trial. *See* TEX. R. APP. P. 33.1(a)(1). *See also Hardeman v. State*, 1 S.W.3d 689, 690 (Tex. Crim. App. 1999); *Issa v. State*, 826 S.W.2d 159, 161 (Tex. Crim. App. 1992). The requirement that an objection be raised in the trial court assumes that the defendant had the opportunity to raise it there. *Hardeman*, 1 S.W.3d at 690.[6]

---

[6] The sentences imposed were within the applicable range of punishment for the offenses, and Texas courts have traditionally held that, so long as the punishment imposed is within the range prescribed by the Legislature in a valid statute, that punishment is not excessive, cruel, or unusual. *See Stacks v. State*, No. 07-15-00336-CR, 2017 Tex. App. LEXIS 7690, at *15 (Tex. App.—Amarillo Aug. 14, 2017, pet. ref'd) (mem. op., not designated for publication). *See, e.g., Darden v. State,* 430 S.W.2d 494, 496 (Tex. Crim. App. 1968). *See also Jackson v. State,* 680 S.W.2d 809, 814 (Tex. Crim. App. 1984); *Rodriguez v. State,* 917 S.W.2d 90, 92 (Tex. App.—Amarillo 1996, pet. ref'd).

ANALYSIS

Appellant complains that the trial court erred in "stacking of the four sentences in which the first sentence of 99 years Appellant [is] not eligible for parole." As we have noted above, as reformed to conform to the trial court's oral pronouncement of sentence, this is, in effect, what the trial court ordered with respect to Appellant's four sentences. During the sentencing phase of the underlying case, after the jury returned its punishment verdict, the trial court inquired, for each separate count, if there was any legal reason why sentence should not be pronounced to which defense counsel replied "[n]o" each time. As such, during pronouncement of sentence, Appellant was given an opportunity to complain about the alleged "cruel and unusual" nature of his punishment, including the cumulative nature of his sentences, but he did not. Neither did he raise it in a motion for new trial. Accordingly, Appellant has failed to preserve error by failing to object at his earliest opportunity. Appellant's sole issue is overruled.

CONCLUSION

The trial court is ordered to execute a corrected judgment *nunc pro tunc* as to Counts I, II, and III and to provide a copy of those corrected judgments to the Texas Department of Criminal Justice. As reformed, the trial court's judgments are affirmed.

Patrick A. Pirtle
Justice

Do not publish.

10