

### IN THE
### TENTH COURT OF APPEALS

_____

**No. 10-21-00203-CR**
**No. 10-21-00204-CR**
**No. 10-21-00205-CR**
**No. 10-21-00206-CR**


**JOSEPH DEMETRIUS FARRIS,**

                                                                    **Appellant**

 **v.**

**THE STATE OF TEXAS,**

                                                                    **Appellee**


_____


**From the 12th District Court**
**Madison County, Texas**
**Trial Court No. 18-13064, 18-13066,**
**18-13068, and 18-13070**

_____

## MEMORANDUM  OPINION

_____


Pursuant to a plea agreement, Appellant Joseph Demetrius Farris pleaded guilty

to two counts of possession of child pornography and two counts of aggravated sexual

assault of an eight-year-old child.  The trial court assessed Farris's punishment at ten

years in prison on the possession of child pornography counts and life in prison on the

aggravated sexual assault of a child counts.  Farris appeals from the trial court's denial

of his pretrial motion to suppress and from the trial court's grant of the State's pretrial

motion to exclude testimony of the affirmative defense of duress.  Farris raises two

issues on appeal.

## Issue One

In his first issue Farris contends:

> Sufficient evidence existed for Farris to present evidence on the
> justification defense of duress and the Trial Court abused its discretion in
> preventing Farris from presenting that justification defense to a jury
> because more than a scintilla of evidence existed to support the
> confession-and-avoidance justification for Farris' conduct.

AUTHORITY

"Under the duress statute, 'It is an affirmative defense to prosecution that the

actor engaged in the proscribed conduct because he was compelled to do so by threat of

imminent death or serious bodily injury to himself or another.'"  *Moreno v. State*, 605

S.W.3d 475, 477 (Tex. Crim. App. 2020) (quoting TEX. PENAL CODE ANN. § 8.05(a)).  A

defendant is entitled to an instruction on a defensive issue raised by the evidence even

if the evidence is weak, contradicted, or of suspect credibility.  *See Maciel v. State*, 631

S.W.3d 720, 723 (Tex. Crim. App. 2021).  A defense may be raised by evidence "from

any source, on each element of the defense that, if believed by the jury, would support a

rational inference that that element is true."  *Shaw v. State*, 243 S.W.3d 647, 657–58 (Tex.

Crim. App. 2007).  "Even a minimum quantity of evidence is sufficient to raise a defense

as long as the evidence would support a rational jury finding as to the defense." *Rogers v. State*, ___ S.W.3d ___, No. PD-0242-19, 2022 WL 14692354, at *3 (Tex. Crim. App. Oct. 26, 2022) (citing *Shaw*, 243 S.W.3d at 657). We do not apply the usual rule of appellate deference to trial court rulings when reviewing a trial court's decision to deny a requested defensive instruction; rather, we view the evidence in the light most favorable to the defendant's requested submission. *Bufkin v. State*, 207 S.W.3d 779, 782 (Tex. Crim. App. 2006). "Whether a defense is supported by the evidence is a sufficiency question reviewable on appeal as a question of law." *Shaw*, 243 S.W.3d at 658.

Compulsion in the context of the affirmative defense of duress "exists only if the force or threat of force would render a person of reasonable firmness incapable of resisting the pressure." *Moreno*, 605 S.W.3d at 477 (quoting TEX. PENAL CODE ANN. § 8.05(c)). In the context of duress, the definition of compulsion creates an objective standard, and we will look to the effect the pressure would have on "a person of reasonable firmness." *Id.* "In order to support submission of an affirmative defense instruction of duress based upon compulsion, there must be some evidence of a specific, objective threat of death or serious bodily harm." *Edwards v. State*, 106 S.W.3d 833, 843 (Tex. App.—Dallas 2003, pet. ref'd).

When evaluating the sufficiency of evidence for a duress defense an imminent threat is a present threat of harm. *Cormier v. State*, 540 S.W.3d 185, 190–91 (Tex. App.—

Houston [1st Dist.] 2017, pet. ref'd) (citing *Anguish v. State*, 991 S.W.2d 883, 886 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd)). Furthermore, immediacy in the context of duress has two components: (1) the person making the threat must intend and be prepared to carry out the threat immediately, and (2) carrying out the threat must be predicated upon the threatened person's failure to commit the charged offense immediately. *Ramirez v. State*, 336 S.W.3d 846, 851 (Tex. App.—Amarillo 2011, pet. ref'd). If the trial court determines that the threat the defendant contends compelled his commission of the proscribed conduct was not imminent, the trial court properly excludes evidence of the threat. *Anguish*, 991 S.W.2d at 886 (citing *Kessler v. State*, 850 S.W.2d 217, 222 (Tex. App.—Fort Worth 1993, no pet.)).

DISCUSSION

At a pre-trial hearing on the State's motion to exclude testimony of the affirmative defense of duress, Farris was the only witness called to testify. During the hearing, Farris conceded he engaged in the conduct of which he was accused and asserted that he was compelled to commit the conduct because of a threat of imminent death or serious bodily injury to himself or another.

Farris' testimony described how two men, one he did not know and the other he came to know because he was the attorney for Farris' landlord, directed him to make pornographic video recordings of the victim and later the victim and himself. Farris detailed that he was surveilled, followed, pressured, and led to believe bad things

would happen to him on almost a daily basis by the men if he did not do as instructed. Farris' testimony reflected that he was subjected to a pervasive campaign of threats and pressure that compelled him to commit the conduct even though at the time Farris was engaging in the conduct, neither of the men were making threats nor even present.

Farris said the first threat occurred when both men came to Farris' house one evening. Farris testified that the attorney instructed Farris to do "exactly what the F I'm told and I'd be fine" while the man he did not know put a gun to his forehead. Farris said the encounter ended with him begging for his life, "more or less." About an hour after the two men left, the unknown man with the gun returned and instructed Farris to film the victim by herself because that is what the attorney wanted. The unknown man told Farris that he better do what he was told, that it would be wise to do so, and that the unknown man knew of other incidents with other families where they didn't do what they were told, and horrible things happened to them. Farris testified to other encounters with the men in which he was told "don't end up dead," and "the last time this had happened, the child had ended up in a paper bag."

Farris testified he started making video recordings of the victim and ultimately made video recordings of the victim and himself because of the threats. Farris indicated that the video recordings were made between the months of August 2017 and April 2018.

On cross-examination Farris agreed that while he was making the video recordings of the sexual acts there was no one present compelling, forcing or threatening him to do it. Farris added that if he had not engaged in the conduct, it would have resulted in something far worse happening to them. We recognize that section 8.05 of the Penal Code does not require actual presence of an individual compelling proscribed behavior. *See Duson v. State*, 559 S.W.2d 807, 809 (Tex. Crim. App. 1977). However, immediacy of the threat of death or serious bodily injury requires that the person making the threat must intend and be prepared to carry out the threat immediately, and carrying out the threat must be predicated upon the threatened person's failure to commit the charged offense immediately. *Ramirez*, 336 S.W.3d at 851. There is no evidence that the threats described by Farris were immediate. "A threat of harm at some indefinite time in the future is insufficient to satisfy the requirement of imminence." *Kelso v. State*, 562 S.W.3d 120, 132 (Tex. App.—Texarkana 2018, pet. ref'd) (citing *Devine v. State*, 786 S.W.2d 268, 270 (Tex. Crim. App. 1989); *Ramirez*, 336 S.W.3d at 851–52; *Anguish*, 991 S.W.2d at 886). The threats made to Farris were of future harm only. Threatening to kill or cause serious bodily injury to Farris at some time in the future if he refused to produce child pornography or engage in conduct that constituted aggravated sexual assault of a child is not sufficient to show a threat of serious bodily injury or death to be inflicted imminently. *See Devine*, 786 S.W.2d at 270–71.

Farris contends in his supplemental brief, in what is labeled a supplemental issue, that the trial court's findings fail to harmonize the undefined language "imminent threat" with interpretations of the same language under the terroristic threat and assault statutes. This amounts to only an additional argument that the trial court abused its discretion in preventing Farris from presenting his duress defense to the jury. Farris argues that the statutory term "imminent threat" in Penal Code section 8.05(a) should be construed consistently with other Penal Code sections using the same term. As examples, Farris refers to the offenses of Terroristic Threat, Assault and Aggravated Assault. Farris further argues that there was evidence to support a finding he was under imminent threat if the definition of "imminent threat" utilized elsewhere in the Penal Code is used. Even if we were to apply the construction of "imminent threat" used in other Penal Code sections, we conclude the trial court properly found that Farris failed to provide evidence that Farris was under imminent threat.[1]

Viewing the evidence in the light most favorable to Farris' requested submission, we conclude the trial court properly excluded the evidence offered in support of Farris' affirmative defense of duress.

We overrule this issue.

## Issue Two

In his second issue Farris contends:

---

[1] We express no opinion regarding whether application of the construction of "imminent threat" used in other Penal Code sections is proper under section 8.05(a) of the Penal Code.

The private search of Farris' SD drive by Melvin Garrison violated Article 38.23 of the Texas Code of Criminal Procedure – Farris did not intentionally abandon the drive, had privacy and property rights in it and Garrison violated Section 33.02 of the Penal Code by accessing the SD drive.

AUTHORITY

"We review a trial court's ruling on a motion to suppress under a bifurcated standard of review." *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). "[W]e afford almost total deference to a trial judge's determination of historical facts." *Id.* Because the trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony, he is entitled to believe or disbelieve all or part of a witness's testimony. *Id.* If "findings of fact are not entered by the trial court, we must view the evidence in the light most favorable to the trial court's ruling and assume the trial court made implicit findings of fact that support its ruling as long as those findings are supported by the record." *Id.* (internal quotes omitted).

"[We] review a trial court's application of the law of search and seizure to the facts de novo. We will sustain the trial court's ruling if that ruling is reasonably supported by the record and is correct on any theory of law applicable to the case." *Id.* at 447–48 (internal quotes omitted).

"If a defendant challenges the admissibility of evidence under article 38.23(a) on the ground it was wrongfully obtained by a private person in a private capacity, the defendant must establish that the private person obtained that evidence in violation of

law." *Baird v. State*, 379 S.W.3d 353, 357 (Tex. App.—Waco 2012), *aff'd*, 398 S.W.3d 220 (Tex. Crim. App. 2013) (citing *Mayfield v. State*, 124 S.W.3d 377, 378 (Tex. App.—Dallas 2003, pet. ref'd)). Initially, the burden of proof is on the defendant to raise the exclusionary issue by producing evidence of a statutory violation. *Pham v. State*, 175 S.W.3d 767, 772 (Tex. Crim. App. 2005). Then the burden shifts to the State to prove compliance. *Id*. However, "the burden of persuasion is properly and permanently placed upon the shoulders of the moving party. When a criminal defendant claims the right to protection under an exclusionary rule of evidence, it is his task to prove his case." *Id*. at 773 (quoting *Mattei v. State*, 455 S.W.2d 761, 766 (Tex. Crim. App. 1970)).

DISCUSSION

Farris testified that he kept his SD cards in a case inside his computer bag and that the only way to access the SD cards would have been for someone to enter his computer bag without his knowledge. Farris acknowledged that he brought his computer bag to the residence of his friend, Melvin. Farris stated he never access his SD cards while at Melvin's residence, and he did not leave the computer bag at the residence. Farris added the only way to access his SD cards was to "enter his computer bag, without my knowledge, and take the small case of SD cards." Farris stated that he believed Melvin's girlfriend entered his computer bag "to take the SD card." Farris acknowledged that the encryption program on the SD card was not activated and that no password was required to view the contents of the SD card.

Melvin testified that he found an SD card under his desk at his residence and that when he saw it, "I didn't - - you know, it's just an SD card, I don't know what is on it." Melvin said, "I put it in and  - - to open it and see what it was because I - - you know, I figured maybe it was mine, you know, SD card under my desk." Melvin then put the SD card in his computer "to see what it was and I discovered the videos." Melvin added he saw the "contents just for a moment, that was enough." After viewing the contents, Melvin then decided to contact his father for advice. Melvin indicated the SD card did not require a password to access the content. Melvin also testified that Farris had been at his home in the week or two prior to him finding the SD card. Melvin did not remember Farris having a bag at his residence on the occasion. When asked if Farris had anything the SD card would have been carried in, Melvin stated that he thought the SD card came out of Farris' phone because he remembered Farris taking the SIM card out of the phone and that the SD card is in the same location. Melvin added that he guessed Farris dropped the SD card and that they did not notice it.

Article 38.23(a) of the Code of Criminal Procedure does not apply if no violation of law occurred in obtaining the evidence at issue. *Thomas v. State*, 586 S.W.3d 413, 419 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd). Here, section 33.02 of the Penal Code, entitled "Breach of Computer Security," is the only law Farris contends Melvin violated. *See* TEX. PENAL CODE ANN. § 33.02. Farris must, therefore, initially establish that Melvin obtained the evidence at issue in violation of section 33.02. *Thomas*, 586

S.W.3d at 419. We will look to the elements of section 33.02 in order to determine whether Farris produced evidence to establish that Melvin obtained the evidence in violation of that section.

Section 33.02 provides that "[a] person commits an offense if the person knowingly accesses a computer, computer network, or computer system without the effective consent of the owner." TEX. PENAL CODE ANN. § 33.02(a). "[T]he 'knowing' mental state required by section 33.02 applies to both the 'access' and 'effective consent' elements of the offense." *Thomas*, 586 S.W.3d at 421 (citing *Muhammed v. State*, 331 S.W.3d 187, 192 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd)). What makes accessing a computer unlawful under section 33.02(a) is that when the access occurs, the circumstances exist that the actor knows it is without the owner's consent. *Thomas*, 586 S.W.3d at 421. "[T]he culpable mental state of "knowingly" must apply to those surrounding circumstances." *Id.* at 421 n.10. Thus, the evidence required to prove a violation of section 33.02(a) is that the actor "knowingly accessed a computer, computer network, or computer system, knowing that this act was without the effective consent of the owner." *Muhammed*, 331 S.W.3d at 192.

Here the evidence produced at the hearing reveals that Melvin accessed the SD card to determine its contents believing it was potentially his SD card after he found the SD card under his desk. There was no evidence that Melvin accessed the SD card knowing he did not have the consent of the owner. Farris' statement that he ***believed***

that Melvin's girlfriend took the SD card without his consent did not implicate Melvin as part of a scheme to access Farris' SD card without consent.

Based on the record before us, we cannot conclude that the trial court erred in denying Farris' motion to suppress on article 38.23 grounds because Farris failed to prove Melvin violated section 33.02 of the Penal Code. We therefore overrule Farris' second issue.

## Conclusion

We affirm the judgment of the trial court.


MATT JOHNSON
Justice


Before Chief Justice Gray,
      Justice Johnson,
      and Justice Smith
Affirmed
Opinion delivered and filed February 15, 2023
Do not publish
[CR25]

