

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-18-00032-CR

_____

**DANNY WAYNE ALCOSER, APPELLANT**

V.

**THE STATE OF TEXAS, APPELLEE**

On Appeal from the 19th District Court
McLennan County, Texas
Trial Court No. 2016-1261-C1 (Counts I, II & III); Honorable Ralph T. Strother, Presiding

December 20, 2019

## OPINION

Before QUINN, C.J., and PIRTLE and PARKER, JJ.

Appellant, Danny Wayne Alcoser, appeals three convictions related to a domestic violence incident.[1]  Following pleas of not guilty to all three counts of the indictment and

---

[1] Originally appealed to the Tenth Court of Appeals, this appeal was transferred to this court by the Texas Supreme Court pursuant to its docket equalization efforts.  TEX. GOV'T CODE ANN. § 73.001 (West 2013).  Should a conflict exist between precedent of the Tenth Court of Appeals and this court on any relevant issue, this appeal will be decided in accordance with the precedent of the transferor court.  TEX. R. APP. P. 41.3.

a plea of true to an enhancement allegation, a jury convicted him on all counts and assessed punishment as follows:

| Count I | Assault Family Violence, a third degree felony enhanced to a second degree felony | TEX. PENAL CODE ANN. §§ 22.01(b)(2), 12.42(a) (WEST 2019) | Twenty years and a fine of $10,000 |
|---------|------|------|------|
| Count II | Endangering a Child, a state jail felony | TEX. PENAL CODE ANN. § 22.041(c), (f) (West 2019) | Two years and a fine of $10,000 |
| Count III | Interference with Emergency Request for Assistance, a Class A misdemeanor | TEX. PENAL CODE ANN. § 42.062(a) (West 2017) | One year in county jail and a fine of $4,000 |

Appellant's sentences were ordered to run concurrently. By four issues, he challenges all three of his convictions. By his first issue, he contends the trial court abused its discretion in denying a mistrial. By issues two and three, he argues he was egregiously harmed when the trial court failed to properly instruct the jury regarding the applicable culpable mental states and when it failed to properly instruct the jury on the law relating to self-defense by not including an application paragraph and by omitting the definition of "reasonable belief." By his fourth and final issue, he maintains the evidence is factually insufficient to support his conviction. For the reasons that follow, we reverse and remand each conviction.

**BACKGROUND**

Appellant and the complainant met when she was assigned as his daughter's Child Protective Services caseworker. When that case was closed, the complainant and Appellant began an on-again, off-again romantic relationship.

2

The complainant has two children, T.W. and J.A., the younger being Appellant's biological child. T.W., a special needs child, was six years old at the time of the incident resulting in Appellant's convictions and J.A., Appellant's child, was less than a year old. In May 2016, the complainant and Appellant were having relationship issues and were attending court-ordered counseling. The court order required them to live separately. During that period of separation, Appellant was staying with a former girlfriend.

On the day in question, the complainant was taking a shower and her two children were in the home. Appellant claimed he believed no one was home and used his key to enter and gather his clothes from the master bedroom closet. The complainant heard someone and exited the shower. When she realized Appellant was removing his clothes from the closet, she tried to persuade him to stay and they engaged in a physical altercation. According to Appellant's version of the events, he thought no one was home and was suddenly struck on the back of the head causing him to instinctively grab the person assaulting him without realizing it was the complainant.

Claiming he was defending himself from the complainant, Appellant placed one of his hands over her esophagus, causing her breathing to be impeded. With a firm hold around her neck, he guided her backwards from the closet through the master bedroom and toward the master bathroom.

The complainant testified that she fought back and was able to free herself from Appellant's grasp. She ran to the living room as Appellant gathered his belongings and left. She then locked the door behind him. When Appellant realized he had left his cigarettes inside, he asked to re-enter the home. The complainant instructed him to

remain outside while she brought him his cigarettes. Instead, he entered the living room and the fighting resumed.

T.W. tried to separate them and was pushed away by Appellant. At that time, the complainant held up her cell phone and threatened to call the police. Appellant responded with a threat and grabbed her phone and damaged it. The complainant then instructed T.W. to run out of the house and he complied. She grabbed her infant and tried to leave through the back door; however, according to the complainant, Appellant followed her with a baseball bat. She testified that he threatened to kill her. She turned and ran toward the front door but veered off toward the master bathroom to try to exit through a window. She was unable to completely close the bathroom door when Appellant pushed it open, causing her to fall into the bathtub while still holding her infant. The complainant hit her head but managed to shield the infant from any injury. Appellant left the premises and the complainant went to a neighbor's house where she asked them to call 911 because her cell phone was inoperable.

Sergeant John Tucker responded to an assault-in-progress call at the complainant's home. He testified he was familiar with the address due to prior encounters with the parties. When he arrived, the complainant gave the officer her version of the incident. Sergeant Tucker decided not to interview T.W. in order to avoid any further trauma to the child. At trial, Sergeant Tucker testified that the complainant was visibly upset, and photographs taken at the scene showed red marks around her neck.

Appellant was arrested a few weeks later. While he was in jail, the complainant visited him, and they also corresponded. Eventually, the complainant signed an affidavit

of non-prosecution seeking dismissal of the charges against Appellant.  She testified she still loved Appellant and did not want him prosecuted.  Nevertheless, the case proceeded to trial.

After the State presented its case-in-chief, Appellant chose not to testify.  However, after both sides had rested and closed, he changed his mind.  The trial court re-opened the evidence and admonished Appellant of the consequences of testifying.  Against counsel's advice, Appellant testified he was defending himself against the complainant who initially assaulted him by surprise while he was gathering his clothes.  According to Appellant, "[n]obody was supposed to be there."  "I started getting hit in the back of the head."  He explained that his physical reaction toward the complainant was "a response to - - to being hit."  He also testified that the complainant damaged her own cell phone and fabricated her version of the events to avoid losing custody of her children because she was under investigation by Child Protective Services.  He also sought admission into evidence of recorded phone calls which he claimed would reveal the truth.[2]

During his testimony, Appellant admitted having a drug and alcohol problem in the past.  He also testified that he suffers from anxiety and cannot always afford his medication.  He admitted relinquishing his parental rights to other children so that the complainant would not lose custody of her two children.

Essentially, Appellant's self-defense theory portrayed the complainant as the provocateur.  He insisted that she fabricated the story about falling in the bathtub.  He

---

[2] Jail phone calls became an issue during trial but are not relevant to disposition of the issues before us.

denied using a baseball bat to intimidate her during the altercation and testified he never threatened to kill her. In his opinion, the complainant's machinations benefitted her with Child Protective Services because, if it was believed she was the instigator, she risked losing custody of her children.

After testimony in the guilt or innocence phase of trial concluded, the court held a charge conference. The charge included three counts—one for each offense—and a paragraph on self-defense. It also included definitions of various culpable mental states and other standard instructions. When the trial court asked for objections to the charge, counsel for Appellant stated, "[n]o objections or requests." After closing arguments, the jury deliberated and then returned guilty verdicts on all three counts.

We will address Appellant's issues in a logical rather than sequential order. First, we begin with issues two and three by which he raises various errors relating to the jury charge. Specifically, by issue two, he maintains the trial court erred in failing to properly define the culpable mental states applicable to each separate offense and by failing to properly tailor them to the offenses with which he was charged. By his third issue, Appellant contends the trial court erred in omitting an application paragraph as well as the definition of "reasonable belief" in the instruction on self-defense. Appellant maintains the cumulative effect of the numerous errors caused him egregious harm. We agree.

### APPLICABLE LAW—CHARGE ERROR

Article 36.14 of the Texas Code of Criminal Procedure mandates that the trial court "*shall deliver to the jury* . . . a written charge *distinctly setting forth the law applicable to the case* . . . ." TEX. CODE CRIM. PROC. ANN. art. 36.14 (West 2007). (Emphasis added).

6

"The purpose of the jury charge is to inform the jury of the applicable law and guide them in its application to the case." *Beltran De La Torre v. State,* 583 S.W.3d 613, 617 (Tex. Crim. App. 2019) (quoting *Hutch v. State*, 922 S.W.2d 166, 170 (Tex. Crim. App. 1996)). Therefore, a proper charge consists of an abstract statement of the law applicable to the case and such application paragraph or paragraphs as are necessary to apply that law to the facts. *Ramirez v. State*, 336 S.W.3d 846, 851 (Tex. App.—Amarillo 2011, pet. ref'd). The abstract paragraph of a jury charge serves as a guide or glossary to help the jury understand the meaning of concepts and terms used in the application paragraph of the charge. *Arteaga v. State*, 521 S.W.3d 329, 338 (Tex. Crim. App. 2017). The failure to give an abstract instruction is reversible error when such an instruction is necessary to correct or complete the jury's understanding of concepts or terms in the application part of the charge. *Malik v. State*, 953 S.W.2d 234, 235 (Tex. Crim. App. 1997).

In its charge to the jury, "[a] trial judge must maintain neutrality in providing such information and guidance." *Beltran De La Torre*, 583 S.W.2d at 617 (citing *Brown v. State*, 122 S.W.2d 794, 798 (Tex. Crim. App. 2003)). The jury charge should avoid any special allusion to a particular fact in evidence, "as the jury might construe this as judicial endorsement or imprimatur." *Id.* Furthermore, an instruction is improper if it "impermissibly guide[s]" a jury's consideration of the evidence or "improperly focuses the jury" on certain evidence because such an instruction would amount to an impermissible comment on the weight of the evidence. *Brown*, 122 S.W.2d at 802. To accomplish these purposes, article 36.14 provides that a jury charge: (1) must be in writing; (2) must "distinctly set[] forth the law applicable to the case"; (3) cannot "express[] any opinion as to the weight of the evidence"; (4) may "not sum[] up the testimony"; and (5) cannot

7

"discuss[] the facts or us[e] any argument in [the] charge calculated to arouse the sympathy or excite the passions of the jury."  TEX. CODE CRIM. PROC. ANN. art. 36.14.

Appellate review of claimed jury-charge error involves a two-step process.  *See Cortez v. State*, 469 S.W.3d 593, 598 (Tex. Crim. App. 2015).  *See also Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985).  A reviewing court must initially determine whether charge error occurred.  *Price v. State*, 457 S.W.3d 437, 440 (Tex. Crim. App. 2015).  If an appellate court finds charge error, the next step requires the reviewing court to analyze that error for harm.  *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012).

Charge error requires reversal when a proper objection has been made and a reviewing court finds "some harm," i.e., error that is calculated to injure the rights of the defendant.  *Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009)*.*  Where, as here, the alleged error was not preserved by objection, Appellant can prevail only if he was egregiously harmed by an erroneous charge.  *Arteaga*, 521 S.W.3d at 338.  Jury charge error is egregious if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory.  *Id.*  Egregious harm is a "high and difficult standard which must be borne out by the trial record."  *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013).

When reviewing harm resulting from charge error, an appellate court must determine harm in light of (1) the jury instructions, (2) the state of the evidence, (3) the arguments of counsel, and (4) any other relevant information revealed by the record of the trial as a whole.  *See Anaya v. State*, 381 S.W.3d 660, 665 (Tex. App.—Amarillo 2012,

pet. ref'd) (citing *Almanza*, 686 S.W.2d at 174). Also, there is no burden of proof or persuasion in a harm analysis conducted under *Almanza*. *See Anaya*, 381 S.W.3d at 665.

### CHARGE ERROR ANALYSIS

### ASSAULT—FAMILY VIOLENCE

By a "superceding" [sic] indictment, Appellant was charged with "intentionally, knowingly, and recklessly" causing bodily injury to the complainant, a member of his family or of his household as described by section 71.003 or 71.005 of the Texas Family Code, by choking or strangling her.[3] *See* TEX. PENAL CODE ANN. § 22.01(a)(1). An offense under this subsection of the Penal Code is a Class A misdemeanor, except that the offense is a felony of the third degree if the offense is committed against a person whose relationship to or association with the defendant is one described by section 71.0021(b), 71.003, or 71.005 of the Texas Family Code, if it is shown on the trial of the offense that the defendant has previously been convicted of an offense under chapter 22 of the Penal Code against a person whose relationship to or association with the defendant is one described by section 71.0021(b), 71.003, or 71.005 of the Texas Family Code. *Id.* at § 22.01(b)(2)(A). Here, the State pleaded the necessary elements to raise the offense to a third degree felony. In addition, the State alleged a prior felony conviction for purposes of enhancement, raising the range of punishment to that of a second degree felony.[4] *Id.* at § 12.42(a). The prior offense alleged was Cause Number W-05-CR-086(01), from the

---

[3] Although the conjunction "and" is used in the indictment to separate the culpable mental states, the charge presents the culpable mental states disjunctively.

[4] An offense "punished as" a higher offense raises the level of punishment, not the degree of the offense. *Oliva v. State,* 548 S.W.3d 518, 526-27 (Tex. Crim. App. 2018).

[United States District Court] for Western District of Texas, Waco Division, for the offense of Possession with Intent to Distribute Methamphetamine.

### CHILD ENDANGERMENT

Appellant was also charged with "intentionally, knowingly, recklessly, or with criminal negligence," engaging in conduct that placed J.A., a child younger than fifteen years of age, in imminent danger of death, bodily injury, or physical or mental impairment, by pushing the child's mother into or against the bathtub while holding her infant. *See* TEX. PENAL CODE ANN. § 22.041(c). Here, the State unnecessarily included in the indictment allegations negating the provisions of section 22.041(h) providing an exception to a charge of child endangerment by abandonment.[5]

### INTERFERENCE WITH AN EMERGENCY REQUEST FOR ASSISTANCE

Appellant was also charged with "knowingly" preventing or interfering with the ability of the complainant to place an emergency telephone call to a law enforcement agency. *See* TEX. PENAL CODE ANN. § 42.062(a). "Knowingly" is the only culpable mental state applicable to this offense. *See generally Schumm v. State*, 481 S.W.3d 398, 399-400 (Tex. App.—Fort Worth 2015, no pet.) (setting forth the elements of the offense).

### SELF-DEFENSE

Self-defense is the use of force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the

---

[5] The amended indictment added an allegation that Appellant did <u>not</u> voluntarily deliver the child to a designated emergency infant care facility as provided under section 262.302 of the Texas Family Code—an inapplicable exception to the operation of section 22.041 in cases of child abandonment. No evidence was offered with respect to this allegation.

other's use or attempted use of unlawful force. TEX. PENAL CODE ANN. § 9.31(a) (West 2019). Entitlement to a self-defense instruction requires the defendant to admit the act alleged, including the culpable mental state, and produce evidence supporting the defense. *Juarez v. State*, 308 S.W.3d 398, 399 (Tex. Crim. App. 2010). The statute provides a presumption that the actor's belief that force was immediately necessary is reasonable under certain circumstances not applicable here. *See generally* TEX. PENAL CODE ANN. § 9.31(a).

### CULPABLE MENTAL STATES

Section 6.03 of the Texas Penal Code sets forth and defines four different culpable mental states: "intentionally," "knowingly," "recklessly," and "criminally negligent." TEX. PENAL CODE ANN. § 6.03 (West 2011). The language in a jury charge must be tailored so that the definition of the culpable mental state is applicable to the conduct elements of the particular offense and the failure to do so is error. *Price*, 457 S.W.3d at 441.

Respecting culpable mental states, courts distinguish offenses into three different categories based on the offense-defining statute's gravamen or focus: (1) "result-of-conduct" offenses, (2) "nature-of-conduct" offenses, and (3) "circumstances-of-conduct" offenses. *Robinson v. State*, 466 S.W.3d 166, 170 (Tex. Crim. App. 2015) (quoting *Young v. State,* 341 S.W.3d 417, 423 (Tex. Crim. App. 2011)). Result-of-conduct offenses concern the result or product of the complained-of conduct. *Robinson*, 466 S.W.3d at 170 (e.g., the conduct *causes* the death, or it *caused* bodily injury). Nature-of-conduct offenses are defined by the act or conduct that is prohibited regardless of any result that might occur. *Id.* (e.g., engaging in conduct that *places* a child younger than fifteen years of age in imminent danger of death, bodily injury, or physical or mental impairment).

11

Finally, circumstances-of-conduct offenses prohibit otherwise innocent behavior that becomes criminal only under specific circumstances. *Id.* (e.g., failure to register as a sex offender because the failure to register is criminalized only if you have a duty to register).

A trial court errs by failing to limit the definitions of the culpable mental states to the conduct element or elements of the offense to which they apply. *Price*, 457 S.W.3d at 441 (citing *Cook v. State*, 884 S.W.2d 485, 491 (Tex. Crim. App. 1994)). Accordingly, when trying multiple offenses in the same criminal proceeding, a trial court must carefully distinguish the culpable mental states applicable to each offense—because the failure to do so is error.

As to the offenses at issue in this case, assault is a "result-of-conduct" or "result-oriented" offense because what is criminalized is conduct that *causes* a particular result, to-wit: bodily injury. *Landrian v. State*, 268 S.W.3d 532, 536 (Tex. Crim. App. 2008). That is to say, the gravamen of an assault offense is conduct that results in, or causes, bodily injury. *Id.* at 533. Similarly, domestic violence, or assault family violence, as charged in this case, is a result-of-conduct offense. *Price*, 457 S.W.3d at 439.

By way of contrast, child endangerment is a "nature-of-conduct" offense because it is the nature of the conduct which is prohibited, regardless of the result. The gravamen of a child endangerment offense is engaging in conduct that endangers a child—regardless of whether the child is actually harmed or the conduct is actually prohibited. *See Walker v. State*, 95 S.W.3d 516, 520-21 (Tex. App.—Fort Worth 2002, pet. ref'd) (concluding that child endangerment is not a result-oriented offense). *But see Millslagle v. State*, 81 S.W.3d 895, 897 n.1 (Tex. App.—Austin 2002, pet. ref'd) (concluding child

endangerment is a result-of-conduct offense); *Suarez v. State*, No. 05-03-00096-CR, 2003 Tex. App. LEXIS 10799, at *8-10 (Tex. App.—Dallas Dec. 30, 2003, pet. ref'd) (mem. op., not designated for publication) (finding that failure to properly secure a child in a vehicle was a result-of-conduct offense).[6]

The only culpable mental state for the offense of interference with an emergency request for assistance is "knowingly."  TEX. PENAL CODE ANN. § 42.062(a) (providing that an individual commits the offense "if the individual *knowingly* prevents or interferes with another individual's ability to place an emergency call or to request assistance . . . .") (emphasis added).  Therefore, the offense of interference with emergency request for assistance is a "circumstances-of-conduct" offense because it is not the interference with just any call that is prohibited, it is the circumstance of the call being to an emergency assistance provider that makes the conduct fall within the purview of that statute.

### JURY INSTRUCTIONS

As stated above, a jury charge should begin with an abstract paragraph defining the elements of an offense, or defining significant words or phrases, followed by an application paragraph that applies that law to the facts of the particular case.  Here, the jury charge did not follow that customary pattern.  Although the introductory paragraph identifies the three separate offenses being tried together—"assault family violence," "endangering a child," and "interference with 911 call"—it initially only defines the elements of the assault—family violence offense.  The paragraph defining the elements

---

[6] In this court's opinion, the problem with most cases finding child endangerment to be a "result-of-conduct" offense is their failure to distinguish between the *mens rea* for the criminal act or omission and the consequences of that act or omission.  For example, in *Suarez*, the criminal act is the failure to properly secure a child in a vehicle; whereas, the consequence of that failure to act is the risk that the child will be endangered.

13

of that offense is then followed by three separate paragraphs defining the culpable mental states of intentionally, knowingly, and recklessly.

At no point does the court's charge set forth the abstract elements defining the offenses of child endangerment or interference with emergency request for assistance, nor does it make any distinction between the various possible definitions of the culpable mental state applicable to each offense.

Section 6.03(a) of the Penal Code defines "intentionally" as follows:

[a] person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.

Here, the court's charge defines "intentionally" as "[a] person acts intentionally, or with intent, with respect to a result of his conduct when it is his conscious objective or desire to cause the result." Any references to the nature of conduct or engaging in conduct were omitted. Therefore, the definition provided was properly tailored to a result-of-conduct offense. As such, the definition was correct as to the offense of assault—family violence, but incorrect as to the offense of child endangerment. An incorrect definition of a culpable mental state is error.

Section 6.03(b) of the Penal Code defines "knowingly" as follows:

[a] person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

Here, the court's charge erroneously conflates the two definitions statutorily provided into a new, totally improper, definition as follows: "[a] person acts knowingly, or

14

with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware that his conduct is reasonably certain to cause the result."[7] As such, the court's definition of "knowingly" was incorrect as to all three offenses: assault—family violence, child endangerment, and interference with a request for emergency assistance. Again, an incorrect definition of a culpable mental state is error.

Section 6.03(c) of the Penal Code defines "recklessly" as follows:

[a] person acts recklessly, or is reckless, with respect to the circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

Here, the court's charge limited the definition of recklessly to a result-of-conduct offense by instructing the jury that, "[a] person acts recklessly when he is aware of but consciously disregards a substantial and unjustifiable risk that the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint." As such, the definition was proper as to the assault—family violence offense but incorrect as to the child endangerment offense. Again—error.

Following some general instructions regarding the presumption of innocence and the burden of proof, the charge continues with three separate application paragraphs

---

[7] For purposes of a result-of-conduct offense, the statutory definition of knowingly should be limited to the following: "[a] person acts knowingly, or with knowledge with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result."

outlining the elements of each offense as contained in the indictment. The first application paragraph outlined the elements of the assault—family violence offense, followed by an instruction to find the seventh element (a prior conviction for assault—family violence) to be "established" based on Appellant's stipulation.[8]

Next, the court's charge contains an outline application paragraph concerning the child endangerment offense followed by an instruction providing the full statutory definition of "criminal negligence." Nowhere is there an abstract paragraph defining the elements of child endangerment. The failure to include an abstract definition of an offense is error. *Malik*, 953 S.W.2d at 235.

Section 6.03(d) of the Penal Code defines "criminal negligence" as follows:

[a] person acts with criminal negligence, or is criminally negligent, with respect to circumstances surrounding his conduct or the result of his conduct when he ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

The gravamen of child endangerment is *engaging in conduct* and as such, the offense is generally a nature-of-conduct offense. *See Walker*, 95 S.W.3d at 520-21. As a "nature-of-conduct" offense, we look to the elements of the offense to determine if the definition is overly broad. Given that the focus of the offense is the risk created by the actor's conduct under the circumstances that existed rather than the result that occurred,

---

[8] During the trial on the merits, Appellant stipulated in writing that he had previously been convicted of assaulting a member of his family or household, in Hill County, Texas, in Cause Number M0693-13, on May 20, 2014, and that conviction became final prior to the date of the offense for which he was on trial. That written stipulation was introduced into evidence.

we find that the definition provided was overly broad. An overly broad definition of an applicable culpable mental state is error. *Malik*, 953 S.W.2d at 235.

Furthermore, the court's charge conflates two separate elements—conduct and result. While the offense of child endangerment requires that the jury find the accused *engaged* in certain conduct with the requisite criminal intent, it also requires that the jury find the conduct in question *placed the child victim in imminent danger of death*, *bodily injury*, *or physical or mental impairment.* In the court's charge, by combining the two elements, the outline application paragraph automatically presumes that the conduct charged, "pushing the child's mother into or against the bathtub while the child's mother was holding the child," places the child "in imminent danger of death, bodily injury, or physical or mental impairment." Nowhere is the jury asked to independently decide whether the conduct charged actually subjects the child to that risk. As such, the elements of the offense, as outlined, constitute an impermissible comment on the weight of the evidence by presuming an essential element of the offense. A court's charge that impermissibly comments on the evidence is error. *Beltran De La Torre*, 583 S.W.2d at 617-18.

Following the definition of criminal negligence, the court's charge contains an outline application paragraph concerning the interference-with-an-emergency-request-for-assistance offense followed by instructions applicable to the affirmative defense of self-defense. Nowhere in the court's charge does there appear an abstract paragraph stating the statutory elements of the offense of interference-with-an-emergency-request-for assistance. Again, the failure to include an abstract definition of an offense is error. *Malik*, 953 S.W.2d at 235.

In the first paragraph concerning the law applicable to the affirmative defense of self-defense, the charge of the court further provides, "[i]f you all agree the State has proved, beyond a reasonable doubt, each of the elements *listed above*, you must next consider whether the defendant's use of force was made in self-defense." (Emphasis added). This sentence arguably limits the application of self-defense to the offense of interference with an emergency request for assistance because it appears on a separate page of the court's charge, immediately following the application paragraph entitled "ELEMENTS-COUNT III," describing that offense. As such, the placement of this instruction is both problematic and erroneous because the elements "listed above" are the elements of the interference-with-an-emergency-request-for-assistance offense.

The self-defense paragraph goes on to state, "[y]ou have heard evidence that when the altercation between the defendant and [the victim] occurred the defendant Danny Wayne Alcoser believed his use of force was necessary to defend himself against [the victim's] use or attempted use of unlawful force." Appellant asserts the instruction on self-defense does not contain an application paragraph. While this sentence does state Appellant's claim of self-defense, it falls fatally short of actually being an application paragraph. Nowhere is the term "unlawful force" defined. Furthermore, merely restating Appellant's claim of self-defense is not the same as instructing the jury to find him not guilty should they find the elements of the affirmative defense to be true. As such, this instruction contains multiple errors.

The self-defense instruction does provide that "[a] person's use of force against another that would constitute the crime of Assault is not a criminal offense if the person reasonably believed the force used was immediately necessary to protect the person

18

against the other's use or attempted use of unlawful force." This portion of the charge of the court is also erroneous because it does not include the definition of "reasonable belief" which is "a belief that would be held by an ordinary and prudent man in the same circumstances as the actor." TEX. PENAL CODE ANN. § 1.07(a)(42) (West Supp. 2019). A charge cannot fully set forth the law applicable to the case without including a statutorily defined word or phrase. *Arline v. State*, 721 S.W.2d 348, 352 n.4 (Tex. Crim. App. 1986). Additionally, the instruction on self-defense failed to include a presumption instruction on the reasonableness of Appellant's belief that force was immediately necessary to protect himself as the law applicable to the case. *Villarreal v. State*, 453 S.W.3d 429, 435 (Tex. Crim. App. 2015). Accordingly, again, this instruction contains multiple errors.

Based on the numerous errors in the charge of the court set forth above, we find the cumulative effect of those errors is sufficient to require this court to consider the next inquiry in jury-charge-error analysis—i.e., whether Appellant was egregiously harmed by that error.

**HARM ANALYSIS**

**(1) THE JURY INSTRUCTIONS**

Here, the definitions of the four culpable mental states were not tailored to the offenses in question. *See Mapolisa v. State*, No. 05-16-00711-CR, 2017 Tex. App. LEXIS 6370, at *16-17 (Tex. App.—Dallas July 11, 2017, pet. ref'd) (mem. op., not designated for publication). Accordingly, the trial court's failure to tailor the charge to the facts of the case weighs in favor of a finding of egregious harm.

19

Generally, no egregious harm results from an erroneous abstract paragraph when the application paragraph correctly instructs the jury. *Medina v. State*, 7 S.W.3d 633, 640 (Tex. Crim. App. 1999). In the underlying case, the court's charge did not include an abstract paragraph defining the elements of either child endangerment or interference with an emergency request for assistance. This omission may appear innocuous in light of the application paragraphs provided; however, upon closer examination, based on the numerous errors in the charge, the absence of an abstract paragraph defining those offenses weighs in favor of a finding of egregious harm.

Abstract paragraphs inform the jury as to the law applicable to the case, i.e., they inform the jury as to the essential elements of the offense charged. Although a proper application paragraph may mitigate an error in the abstract paragraph; *see Anderson v. State*, No. 10-14-00182-CR, 2015 Tex. App. LEXIS 11134, at *19 (Tex. App.—Waco Oct. 29, 2015, pet. ref'd) (mem. op., not designated for publication), it is hard to imagine how an application paragraph can operate as a substitute for the complete omission of an abstract statement of the essential elements of an offense. The complete failure to define an offense leaves a jury free to speculate on the law applicable to the case. Accordingly, the omission of an abstract paragraph, an error committed not once but twice, weighs in favor of a finding of egregious harm.

Additionally, of critical importance is the fact that the outline application paragraph pertaining to the offense of child endangerment combines the element of an applicable *mens rea* concerning the accused's conduct with the requirement that the jury find that such conduct placed the child "in imminent danger" of death, bodily injury, or physical or mental impairment. By combining separate elements into one element (remembering that

20

there is no abstract paragraph defining the requisite elements), this instruction runs afoul of the requirement that the charge "distinctly" set forth the law applicable to the case. The combination of both cause and effect also leads to the distinct possibility that a reasonable juror might conclude the statement, "engage in conduct *that placed* [the child], a child younger than fifteen (15) years of age, in imminent danger of death, bodily injury, or physical or mental impairment," was a comment on the weight of the evidence rather than a separate element of the offense. (Emphasis added). By depriving the accused of a clear and unequivocal finding that he committed certain conduct and that such conduct caused that prohibited effect, the instruction served to greatly reduce the State's burden of proof. A reduction of the State's burden of proof deprives the defendant of a valuable constitutional right, weighing heavily in favor of a finding of egregiousness.

Finally, regarding the law applicable to the affirmative defense of self-defense, the jury was not fully instructed on the law applicable to the case. Specifically, the omission of the definition of "reasonable belief" and an instruction on the statutory presumption of the reasonableness of Appellant's belief that force was immediately necessary to defend himself, left the jury completely free to speculate on the applicability of Appellant's self-defense theory. By virtue of these omissions, the jury did not have the opportunity to deliberate by applying what an "ordinary and prudent man" would have done under the same or similar circumstances. These omissions vitally affected the applicability and understandability of Appellant's key defensive theory. Based on the cumulative effect of these errors, we find those omissions weigh in favor of a finding of egregious harm.

21

**(2) THE STATE OF THE EVIDENCE**

In this case, the jury heard evidence of an on-again, off-again romance between Appellant and the complainant. The complainant testified that she still loved Appellant and she did not want him to leave her. According to Appellant, the complainant was jealous that he was temporarily living with an ex-girlfriend and that jealousy caused her to be the first aggressor.

Furthermore, the jury was presented with two versions of the charged offenses that resulted in the complainant's injuries. On one hand, the complainant testified that Appellant assaulted and threatened her, engaged in conduct that placed her infant in imminent danger of bodily injury, and damaged her phone to prevent her from calling the police. On the other hand, Appellant testified the complainant was the instigator of the conflict because she did not want him to leave her and because she feared losing custody of her children. This "he-said/she-said" state of the evidence made the jury's duty critical—a job that absolutely depends on accurate and complete instructions and definitions.

Appellant admitted his conduct when he testified. However, he testified that he acted in response to physical provocation from the complainant. Under the state of the evidence, the errors in the court's charge relevant to Appellant's claim of self-defense become more critical. While the jury's rejection of Appellant's version of the events is understandable, the failure to properly instruct that jury on the law applicable to self-defense weighs in favor of a finding of egregiousness.

**(3) THE ARGUMENTS OF COUNSEL**

During opening arguments, the prosecutor argued that while the complainant did sign an affidavit of non-prosecution, it was done so only because she did not want Appellant to have legal problems and not because the events did not occur. In closing arguments regarding the assault, the prosecutor emphasized that Appellant "intentionally" committed the offenses. "[H]e knew exactly *what he was doing*, which quite frankly, I don't think you even need to look at reckless or knowingly, because he *intended to do these things*." (Emphasis added). The prosecution focused on the intentional nature of Appellant's conduct, which Appellant admitted, and not on the *result* of that conduct. Again, because assault—family violence is a result-oriented offense, the prosecutor's reference to intentional nature of his conduct rather that the result of his conduct was both confusing and erroneous.

As to the charge of child endangerment, the prosecutor argued that "[w]hen you look at Count II . . . [Appellant] knew what he did." The prosecutor's argument continued as follows:

> so when you're looking at Count II [sic] the Interference with an Emergency Call, there's a section that talks about criminal negligence. That, basically, says that if you don't believe that he intentionally, knowingly or recklessly did it, that he could also do it by criminal negligence, and, quite frankly, Ladies and Gentlemen, I don't even think you all need to get there, but if you do get all the way to criminal negligence, he absolutely knew that there was a substantial risk of harm to [the child]. You cannot shove a grown woman holding a child down into a hard, porcelain bathtub without creating a risk of harm to that child.

The prosecutor incorrectly and interchangeably argued the State had proven the culpable mental state with respect to Count II (child endangerment) and Count III (interference with

23

an emergency call) to the jury.  The only culpable mental state applicable to interference with a request for emergency assistance is "knowingly."  Therefore, referencing "criminal negligence" with regard to that offense was a misstatement of the law.  *See* TEX. PENAL CODE ANN. § 42.062(a).  Endangering a child, on the other hand, can be committed "intentionally, knowingly, recklessly, or with criminal negligence."  Based on this court's review of the prosecutor's arguments, we conclude the jurors were not only misguided and left without adequate explanation as to the appropriate culpable mental states to apply to either Count II or Count III, they were, in fact, affirmatively misinformed by being given an incorrect explanation.  The lack of clarity with respect to the jury charge itself, when coupled with the prosecutor's incorrect and confusing arguments weigh heavily in favor of a finding of egregious harm.

### (4) ANY OTHER INFORMATION REVEALED BY THE ENTIRE RECORD

Finally, a review of the entire record illustrates the inherent risks of combining multiple offenses with different applicable mental states into one charge.  The jury was not properly instructed on <u>any</u> of the offenses.  Instead, it received a hodge-podge of inappropriately defined terms and offenses.  While this court acknowledges that egregious harm is a "high and difficult standard," we conclude the multiple errors in the charge had the cumulative effect of depriving Appellant of a fair trial and vitally affected his defensive theory.  *See Abbott v. State*, 196 S.W.3d 334, 349 (Tex. App.—Waco 2006, pet. ref'd) (quoting *Chamberlain v. State*, 998 S.W.2d 230, 238 (Tex. Crim. App. 1999) ("It is conceivable that a number of errors may be found harmful in their cumulative effect.")).  Accordingly, we conclude that Appellant was egregiously harmed by the

24

multiple errors in the charge.  Issues two and three are sustained.  Our disposition of these issues pretermits consideration of issues one and four.  *See* TEX. R. APP. P. 47.1.

**CONCLUSION**

The trial court's judgments are reversed and the causes are remanded to the trial court for further proceedings.


Patrick A. Pirtle
Justice


Publish.