**Opinion issued August 11, 2022**



In The

# Court of Appeals

For The

# First District of Texas

———————————

**NO. 01-20-00280-CR**

———————————

**KEVOUGHN DONTRELL FIELDS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 184th District Court**
**Harris County, Texas**
**Trial Court Case No. 1519214**

---

## O P I N I O N

Kevoughn Fields was convicted of capital murder and sentenced to life imprisonment without the possibility of parole. In one issue, Fields contends there was error in the court's charge. We affirm.

## Background

Demarquise Edwards—known as the "drank man" because he sold codeine syrup—was shot to death along with two others in his apartment at the Arbor Court apartment complex. Kevoughn Fields, Celvin Brooks, and Brodrick Bell were seen in a truck in the same apartment complex shortly before the murders. Anonymous tips in the police investigation led to Fields, Brooks, and Bell being charged with the murders.

At trial, several witnesses testified to seeing Fields, Brooks, and Bell at the apartment complex on the day of the murder and a day or two before the murder, though they had never been seen on the premises before. D. Bradley testified that he saw Fields, Brooks, and Bell in a truck just before the murders and that all three were dressed in all black. It stood out to Bradley that they were at this particular apartment complex because he had never seen them there before. Instead, they usually hung around the Haverstock apartments.

Bradley was in the parking lot with his friend and roommate, A. Coleman. He watched as Coleman talked to Fields, Brooks, and Bell in the parking lot. Then, Bradley walked to his apartment. About 15 minutes later, Bradley heard gunshots and went to his balcony to look out. He testified that he saw "three dudes running down the stairs" dressed in all black. They were running to the same truck he saw Fields, Brooks, and Bell in just minutes earlier. He testified he could not see their

faces as they ran, but he recognized them by their matching black clothing, their skin tones, and their dissimilar heights.

On cross-examination, though, Bradley admitted that the version of events he had just told the jury did not match the version he told in Brooks's and Bell's murder trials. For example, in the earlier trials, he had said that he did not approach the truck, yet, at this trial he testified that he did. At the earlier trials, he had testified that there were four men at the truck, yet at this trial, he said that there were only three. When asked what happened to the fourth person, Bradley first responded that it was probably the getaway driver who he did not know. He then asserted that there had never been a fourth person, even though he acknowledged that he had told the earlier juries that there was a fourth person. A final inconsistency is that he had told one of the earlier juries that he was "kind of" blind but later told this jury that he recognized the three men as they fled.

Bradley's cousin and roommate, R. Jones, testified that she saw Fields, Brooks, and Bell at the Arbor Court apartment complex two days before the murders. She saw Brooks there again one day before the murders. He was near the apartment where the murders occurred.

A. Coleman testified that he was arrested shortly after the murders and is in a federal detention center, having pleaded guilty to unrelated charges. He agreed that he was hopeful that his cooperation in testifying in the murder trials would

3

benefit him in his federal sentencing. Coleman knew Edwards, one of the three shot to death. Coleman sold guns to Edwards, and Edwards sold "weed" to him.

Coleman testified that he saw Fields, Brooks, and Bell at the Arbor Court apartments two days before the murders. They were near a truck. He did not talk to them. On the day of the murders, he saw them again at the Arbor Court apartments. They were dressed in black and had on gloves. Coleman testified, vaguely, that the three of them told him what they were about to do and that Coleman replied that it was a "suicide mission" because he had sold guns to Edwards. Fields told Coleman that one of his relatives had put him on a mission. He did not correct the prosecutor who rephrased the testimony to indicate that Fields said his relative put him "on a lick." Coleman confirmed that a "lick" means setting someone up to get robbed.

According to Coleman, a fourth person was with them. Fields, Brooks, and Bell were outside the truck, and the fourth person was inside the truck. Coleman later saw Fields, Brooks, and Bell walking, with the truck following them. Still later, he heard gunshots and saw three people run toward the same truck. They were dressed in all black. He saw Bell carrying a pink gun that Coleman recognized because he had sold it to a mutual acquaintance months earlier. A photograph was admitted into evidence, and Coleman testified that Bell was in the photograph holding the pink gun. Fields and Brooks were also in the photograph.

The prosecutor pointed out inconsistencies in Coleman's testimony and that of Bradley and Jones: they placed each other in different places when the gunshots were fired. The witnesses admitted to the inconsistencies.

D. Catalon was also at the Arbor Court apartments that night. He knew one of the three people who were killed, Terrell Paynes. He testified that he heard a loud sound that he later believed was a gunshot and that he saw a person in a white shirt running through the apartment complex. This testimony did not match that of Coleman and Bradley, who both said the people running through the apartment complex wore all black.

Fields gave two statements to the police over the course of a single day. In the first statement, he denied any knowledge of the robbery or shooting. He denied being at the Arbor Court apartment complex. He indicated that he stays home with his young child and does not go out in the evenings. In the second interview, though, Fields admitted he was at the Arbor Court apartment complex when the shooting occurred. He said that he had agreed to drive Brooks and Bell over there for them to rob the person who sells drugs. Brooks and Bell had guns; he did not. Fields said that Brooks and Bell got out of the truck and went upstairs. He sat in the truck. As he saw them running toward the truck, he heard gunshots. He thought that they were being shot at. They got into the truck with some clear bags with weed and some money. He later saw a Facebook post about someone dying at the

5

Arbor Court apartment complex that night. He "put two and two together" and realized what had happened.

He said that the group had driven to the Arbor Court apartment complex a few days earlier. Brooks and Bell did not tell him why they were going over there that day. But he knew why they were going on the day of the shootings. Fields said that, although he never knew anything about going to kill anyone, he did know that they were going to run a "lick" on a drug house. He had agreed to be the driver.

**Jury Charge Error**

The sole issue in this appeal is a claim of jury-charge error. Fields phrases it in various ways, but, at its core, he complains that the jury was allowed to convict him of one form of capital murder—Section 19.03(a)(7), murder of more than one person during the same criminal transaction—by deciding that he had conspired to commit a robbery and that his coconspirators had then committed a triple murder. He acknowledges that case law allows a Section 7.02(b) coconspirator party instruction without that theory being included in the indictment. *See* TEX. PENAL CODE § 7.02(b); *Montoya v.* State, 810 S.W.2d 160, 165 (Tex. Crim. App. 1989). His quarrel is with the unique presentation of this case, in which capital murder is based on being a conspirator to an unindicted crime. Because Fields was not being tried for robbery, and because the offense of robbery was not the basis the State was relying on to elevate the murder charge to capital murder, the jury charge did

not contain the elements of robbery. Without the elements being in the charge, the jury was left without any understanding of the crime to which Fields was alleged to be a conspirator before finding him guilty of capital murder for the resulting multiple deaths.

## A. Standard of review

In determining whether there is reversible error in the jury charge, we first decide whether error exists. *Middleton v. State,* 125 S.W.3d 450, 453 (Tex. Crim. App. 2003); *Jacobs v. State*, 355 S.W.3d 99, 101 (Tex. App.—Houston [1st Dist.] 2011, pet. dism'd). If there is error, then we determine next whether "the error in the charge was the subject of a timely objection in the trial court." *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g). If there was a timely objection, we then determine whether the accused was harmed by the error. *See id.* We reverse the trial court's judgment if the error "is calculated to injure the rights of the defendant." TEX. CODE CRIM. PROC. art. 36.19; *Almanza,* 686 S.W.2d at 171. This standard requires proof of no more than "*some* harm to the accused from the error." *Almanza,* 686 S.W.2d at 171. The actual degree of harm must be analyzed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of the probative evidence, the argument of counsel, and any other relevant information revealed by the record of the trial as a whole. *Id.*

7

**B.     Applicable law**

The purpose of the trial court's jury charge is to instruct the jurors on the law applicable to the case. TEX. CODE CRIM. PROC. art. 36.14; *Vasquez v. State*, 389 S.W.3d 361, 366 (Tex. Crim. App. 2012). The charge is the instrument by which the jury convicts; therefore, it must contain an accurate statement of the law and set out all the essential elements of the offense. *Dinkins v. State*, 894 S.W.2d 330, 339 (Tex. Crim. App. 1995).

The abstract portion of the court's charge sets forth the law, in general terms, for the jury, including statutory definitions and offense elements. *See Vasquez*, 389 S.W.3d at 366. The application paragraphs then apply that law to the particular facts, as limited by the indictment. *Vasquez*, 389 S.W.3d at 366–67.

A jury charge that improperly states the law or the elements of an offense is erroneous. *See Alcoser v. State*, 596 S.W.3d 320, 334 (Tex. App.—Amarillo 2019) (holding that failure to include abstract paragraph stating statutory elements of offense was error), *ref'd on other grounds*, — S.W.3d —, No. PD-0166-20, 2022 WL 947580 (Tex. Crim. App. Mar. 30, 2022); *see also Sandig v. State*, 580 S.W.2d 584, 586 (Tex. Crim. App. 1979) (holding that overly broad definition of "sexual contact" in abstract instruction was reversible error). Likewise, a jury charge with an application paragraph that incorrectly applies the pertinent law to the facts of a

given case is erroneous. *Cortez v. State*, 469 S.W.3d 593, 598 (Tex. Crim. App. 2015); *Gray v. State*, 152 S.W.3d 125, 127–28 (Tex. Crim. App. 2004).

There are two standards of review for claims of jury-charge error. *Alcoser v. State*, — S.W.3d —, No. PD-0166-20, 2022 WL 947580, at \*3 (Tex. Crim. App. Mar. 30, 2022). When a defendant timely objects to alleged jury-charge error, the record need only show "some harm" to obtain relief. *Id.* When there was not a timely objection, the record must show "egregious harm." *Id.* Harm is assessed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel, as well as any other relevant information revealed by the trial record as a whole. *Id.* Neither party bears the burden to show harm. *Marshall v. State*, 479 S.W.3d 840, 842–43 (Tex. Crim. App. 2016).

**C.    The indictment and charge conference rulings**

Fields was indicted on a single charge: capital murder for the death of more than one person during the same criminal transaction. *See* TEX. PENAL CODE § 19.03(a)(7). He was not indicted for the robbery of Demarquise Edwards. *See id.* § 29.02(a)(2). Nor was he indicted for capital murder for having killed someone during the course of committing or attempting to commit a robbery. *See id.* § 19.03(a)(2).

The State requested a jury instruction on coconspirator party liability under Penal Code section 7.02(b). The State argued that party liability does not have to be charged in the indictment to be included in the court's charge and, as a result, there was no issue of lack of notice concerning the State's use of the felony of robbery as a mechanism to access party liability for the murders, to the extent the evidence supported a conclusion that Fields's co-robbers—Brooks and Bell—killed the three people in the apartment.

The trial court questioned the permissibility of relying on an underlying felony—here, robbery—for the Section 7.02(b) instruction without charging that felony in the indictment, including it in the court's charge as an offense, or listing its elements in the charge. The State responded that its presentation of the case was permissible, relying on *Medrano v. State*, No. AP-75320, 2008 WL 5050076 (Tex. Crim. App. Nov. 26, 2008) (not designated for publication). In that case, the jury was instructed on coconspirator party liability as part of a Section 19.03(a)(7) capital murder charge for the murder of more than one person. *Id.* at *7.

Fields correctly pointed out that the *Medrano* opinion did not identify all the crimes for which Medrano was indicted; therefore, a reader would not be able to determine whether that case was factually similar to the issue before the trial court, which was party liability as a coconspirator to robbery without an indictment or any charge instructions on robbery. Fields's counsel told the trial court that his

10

legal research revealed no cases in which the State sought an instruction on party liability as a conspirator to an unindicted felony for which no jury instructions were given. He argued that there were fairness and notice problems with relying on a robbery plot to open the possibility of party liability for a capital murder without charging the jury on robbery.

Fields further argued that the Section 7.02(b) instruction with an underlying felony of robbery would be inappropriate because there are elements to the offense and those elements were not included in the charge. Fields requested that the court's charge include robbery as a lesser-included offense if the court overruled his objection and allowed a Section 7.02(b) instruction on coconspirator party liability. The result would be that the court's charge would then identify the elements of robbery.

The trial court granted the State's request for Section 7.02(a) and Section 7.02(b) party liability instructions, denied Fields's objections to the inclusion of those instructions, and denied Fields's request for an aggravated robbery charge with related instructions.

Because of the indicted and the trial court's rulings in the charge conference, the jury was permitted to base its capital murder conviction on party liability for Fields's conspiring to commit robbery and his coconspirators committing multiple murders, but without the jury being given any instructions on the elements of

11

robbery or any opportunity to analyze whether those elements were met. The term *robbery* was included as an abstract term without a definition or any elements listed. The jury was simply instructed that "robbery is a felony." Fields argues that the presentation of this case denied him due process and notice of the theory of the case against him.

In sum, the jury was left to decide whether Fields had conspired to commit the felony offense of robbery without any instructions on the elements of that offense, with the consequence being potential legal liability for a shooting committed by other people without the criminal defendant having any intent to commit the murder, i.e., party liability for a capital murder. This raised the possibility that the jury would fail to appreciate the elements of the selected felony, misunderstand what one would have to plan to participate in a robbery, and then conclude that a conspiracy existed.

Fields asserted to the trial court that his legal team could not find any case that analyzed whether the felony relied on for party liability also had to be otherwise charged to the jury, either in the abstract portion with elements listed or in the application section as an alternative offense. The State did not dispute his claim. The trial court, in turn, indicated its agreement that existing case law did not address a scenario in which party liability is based on an unindicted felony with no jury charge instructions on that felony. Indicating that it understood Fields's

12

argument, the trial court asked, "Does that make a difference?" Fields highlighted that the offense of robbery has elements that come at issue with a Section 7.02(b) conspiracy charge, yet the State was seeking a jury charge without robbery included. Ultimately, the trial court ruled that Section 7.02(a) and Section 7.02(b) party liability would be included in the charge and denied Fields's request that robbery be included.

We begin our analysis by setting out the elements of robbery that were omitted from the court's charge and discussing the more typical scenario in which the felony underlying party liability is also a charged offense with elements included in the court's charge.

## D. The elements that were omitted from the court's charge

A person commits the offense of robbery if, in the course of committing theft and with intent to obtain or maintain control of the property, he intentionally, knowingly, or recklessly causes bodily injury to another or intentionally or knowingly threatens or places another in fear of imminent bodily injury or death. *See* TEX. PENAL CODE § 29.02(a)(2). A person commits aggravated robbery if he commits robbery and he causes serious bodily injury to another or uses or exhibits a deadly weapon, among other possibilities. *See id.* § 29.03(a)(1–2).

13

**E. Generally, when party liability is based on a conspiracy to commit robbery, the robbery elements are included in the court's charge**

At the charge conference, Fields correctly pointed out that there are abundant examples in the case law of party liability based on a robbery in which the elements of robbery are included in the charge because the defendant has also been indicted for the underlying robbery. He stated that such a presentation was the norm. He argued that it is not normal and, in fact, his legal team could not locate any case in which robbery provided the underlying basis for party liability without it also being an offense for the jury's consideration, as a lesser-included offense.

Our own research located two cases that provide some aid. In the first, a man arrived at the police station and made incriminating comments hours after he—or someone with a very similar appearance—shot a woman in a neighborhood park. *Gilmore v. State*, 397 S.W.3d 226, 230–31 (Tex. App.—Fort Worth 2012, pet. ref'd). The man who appeared at the police station, Gilmore, was charged with aggravated assault with a deadly weapon for having intentionally, knowingly, or recklessly caused bodily injury to the woman when he shot her with a deadly weapon. *Id.* at 229.

At trial, Gilmore testified to an elaborate plot in which his unnamed coconspirators planned to shoot a gun at a public location without hurting anyone and then leave a blue capsule at a library as a clue to him that they had completed their mission, at which point he would go to the police station and make

14

incriminating statements, which would then lead the police to wrongly suspect him. *Id.* at 232–33. Gilmore denied that he had been at the park. He testified that the police were supposed to jump to the conclusion it was him without a thorough investigation, which, presumably, would later be proven wrong. He described the plot as an act of "political activism." *Id.* at 233.

The trial court instructed the jury on Section 7.02(b) coconspirator party liability, telling the jury that it could convict Gilmore for aggravated assault if he entered into a conspiracy with one or more unnamed persons to commit the felony offense of aggravated assault, deadly conduct, or terroristic threat, and that, in the attempt to carry out the conspiracy, one or more coconspirators intentionally, knowingly, or recklessly caused bodily injury to the woman by shooting her with a deadly weapon. *Id.* at 246. In other words, Gilmore did not have to be the shooter; he could have conspired to commit a terroristic threat and be legally responsible for his coconspirators' actions at the park.

The jury charge included the definitions of the felony offenses of "deadly conduct" and "terroristic threat" in the abstract portion of the charge without also supplying those felonies as alternative charges for conviction. *Id.* The jury convicted him of aggravated assault.

Gilmore's argument on appeal was that the trial court erred in denying his request for "deadly conduct" and "terroristic threat" to be included in the charge as

lesser-included offenses "because the State was permitted to use the definitions of these offenses and some evidence of these offenses was presented." *Id.* at 246. The appellate court held that Gilmore waived some aspects of his arguments, but also held that "we cannot say that the trial court erred by defining deadly conduct and terroristic threat in the abstract portion of the charge and in listing these offenses in the parties conspiracy application paragraph." *Id.* at 247. Thus, as one step of the court's analysis, it held that it was proper to define the underlying felonies used to allow party liability under Section 7.02(b).

In *Milwicz v. State*, No. 02-13-00193-CR, 2014 WL 3398298 (Tex. App.—Fort Worth July 10, 2014, pet. ref'd) (mem. op., not designated for publication), the defendant was indicted for Section 19.02(b)(3) felony murder in the course of a robbery and Section 19.03(a)(2) capital murder in the course of a robbery. *Id.* at *2 & *2 n.5. The State's theory was that Milwicz planned and promoted the robbery of her former boss and roommate, although she was not present when her two acquaintances robbed and murdered him. *Id.* at *4.

The jury charge defined robbery, with its elements listed, and included instructions on party liability under Section 7.02(a) (party liability) and 7.02(b) (conspiracy party liability). *Id.* at *3. The jury convicted her of felony murder, and the appellate court determined that there was sufficient evidence to support the jury's determination that Milwicz had intended that a robbery be committed and

agreed with her coconspirators for them to commit the robbery, that her coconspirators robbed the complainant and caused his death, that the murder was in furtherance of the robbery, and that Milwicz should have anticipated the murder in carrying out the robbery. *Id.* at *4, *7.

The *Milwicz* case is another example in which robbery was included in the abstract, with its elements listed for the jury, as it considered whether to convict Milwicz of felony murder or capital murder based on the underlying robbery, without robbery also being presented as an alternative offense for conviction.

In Fields's jury charge, by contrast, no definition or elements of robbery were provided to the jury, yet the jury was permitted to base a capital murder conviction on a conspiracy to commit the undefined offense of "robbery" with the sole related instruction being that "robbery is a felony."

**F.     Capital murder under Section 19.03(a)(2) in the commission of felony robbery would have required that the robbery elements be included in the charge**

If Fields had been charged with capital murder under Section 19.03(a)(2) for murder in the course of a robbery (either as an actor or a coconspirator), it would have been error for the trial court to charge the jury, over his objection, without including the elements of robbery. *See Riley v. State*, 447 S.W.3d 918, 922 (Tex. App.—Texarkana 2014, pet. ref'd). In such a case, the elements of the underlying

17

felony of robbery would have become elements of the offense of capital murder.
*Id.*

Here, the State did not indict Fields under Section 19.03(a)(2) for capital murder based on committing a murder during the course of committing a robbery. Instead, it used Section 19.03(a)(7) for capital murder based on committing multiple murders in one criminal transaction and used Section 7.02(b) to allow conviction, even for a non-triggerman, if Fields conspired to commit one felony—robbery—and his coconspirators committed another felony—multiple murder. Robbery remained the underlying felony, but it underlies Fields's potential *party* liability, not an element of the offense itself.

**G.   To correctly set forth the law applicable to the case, the charge in Fields's case had to include the elements of robbery**

As mentioned, we have not been presented with a case directly on point with the issue we must resolve. Nor have we located one. In considering the issue, we have taken into account the case law on party liability, given weight to the purpose of the court's charge and the guidance it must provide juries in applying statutory-based law to the case's facts, and considered the requirement that elements of an offense be charged as well as the relevant analysis in *Riley* and *Milwicz*.

Texas Code of Criminal Procedure article 36.14 provides that the trial court "shall . . . deliver to the jury . . . a written charge distinctly setting forth the law applicable to the case." TEX. CODE CRIM. PROC. art. 36.14. "The purpose of the

18

jury charge is to inform the jury of the applicable law and guide them in its application to the case." *Beltran De La Torre v. State*, 583 S.W.3d 613, 617 (Tex. Crim. App. 2019) (quoting *Hutch v. State*, 922 S.W.2d 166, 170 (Tex. Crim. App. 1996)). A proper jury charge consists of an abstract statement of the law and the application paragraphs. *Ramirez v. State*, 336 S.W.3d 846, 851 (Tex. App.—Amarillo 2011, pet. ref'd). The abstract paragraphs serve as a glossary to help the jury understand the meaning of various concepts and terms used in the later application paragraphs. *Crenshaw v. State*, 378 S.W.3d 460, 466 (Tex. Crim. App. 2012).

Statutory definitions that affect the meaning of an element of the offense should be communicated to the jury. *Villarreal v. State*, 286 S.W.3d 321, 329 (Tex. Crim. App. 2009). The application paragraphs then apply the relevant law, the definitions found in the abstract portion of the charge, and general legal principles to the particular facts of the case. *Vasquez*, 389 S.W.3d at 366; *see Alcoser*, 596 S.W.3d at 332 (stating that "a jury charge should begin with an abstract paragraph defining the elements of an offense, or defining significant words or phrases, followed by an application paragraph that applies that law to the facts of the particular case"), *rev'd on other grounds*, 2022 WL 947580.

The above uncontroversial statements of law guide our analysis of charge error. That process is derailed when a jury is allowed to convict a defendant of

capital murder because he conspired to commit a robbery without the jury receiving *any* instructions on what constitutes a *robbery*, as a statutory penal offense, or what a person would have had to agree to do to show an agreement to commit a robbery. *Cf. MacDougall v. State*, 702 S.W.2d 650 (Tex. Crim. App. 1986) (holding that trial court erroneously charged jury that theft involved acquiring property without owner's "effect consent," which defined "effective consent" in terms of being "induced by deception," without including statutory definition of deception to guide jury's analysis).

We have concluded that, when basing a conviction on party liability for a conspiracy to commit another felony, the abstract portion of the court's charge must include the elements of the underlying felony, even if that felony is not presented in the court's charge as an alternative offense for conviction. Without the elements being included in the court's charge, there is no legal basis from which the jury could conclude that a conspiracy to engage in the conduct that makes up the statutory offense has occurred. To hold otherwise would untether the jury from the law and allow a loose understanding—and possibly an affirmative misunderstanding—of various penal offenses to attach party liability to felonies committed by others that might not have been intended by the criminal defendant.

Omission of the elements of robbery, here, was charge error.

20

## H.    Harm analysis

When, as here, the appellant preserved error, the error is reversible so long as it caused some harm. *Jordan v. State*, 593 S.W.3d 340, 346 (Tex. Crim. App. 2020). Under the some-harm standard, any harm will do, so long as it is actual and not merely theoretical. *Chambers v. State*, 580 S.W.3d 149, 154 (Tex. Crim. App. 2019); *Gonzalez v. Sta*te, 610 S.W.3d 22, 27 (Tex. Crim. App. 2020). Neither side has the burden to prove or disprove harm. *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013). Instead, the reviewing court independently reviews the record. *See id.* To assess harm, we evaluate the entire record, including the jury charge, contested issues, weight of the probative evidence, arguments of counsel, and any other relevant information. *Jordan*, 593 S.W.3d at 347. Our assessment of harm turns on the record as a whole; therefore, whether jury charge error was harmful is determined on a case-by-case basis, rather than under any bright-line rules. *Rogers v. State*, 550 S.W.3d 190, 192 (Tex. Crim. App. 2018).

On balance, after a review of the complete record as part of our evaluation for harm, there appears to have been no room in the evidence for disagreement that robbery was the purpose of the visit to Arbor Court apartments that night. Therefore, we conclude that the failure to specify the elements of robbery in the court's charge was harmless.

### *The jury charge as a whole*

As stated, nowhere in the charge was the jury told the elements of robbery. They were told that robbery is a felony. They were further told that, if Fields entered into an agreement with Brooks and Bell to commit robbery, they carried out their conspiracy to commit robbery, either Brooks or Bell killed the people in the apartment in the course of committing and in furtherance of the planned robbery, and Fields should have anticipated multiple murder as a result of the conspiracy to commit robbery, then they could find him guilty of capital murder.

> If you find from the evidence beyond a reasonable doubt that the defendant, Kevoughn Dontrell Fields, and Brodrick Bell and/or Celvin Brooks entered into an agreement to commit the felony offense of robbery and pursuant to that agreement, if any, they did carry out their conspiracy to commit robbery and that in Harris County, Texas, on or about the 20th day of March, 2015, while in the course of committing such robbery, Brodrick Bell and/or Celvin Brooks did intentionally and knowingly cause the death of Kiara Jackson, by shooting Kiara Jackson with a deadly weapon, namely a firearm, and intentionally and knowingly cause the death of Demarquise Edwards by shooting Demarquise Edwards with a deadly weapon, namely a firearm, and intentionally and knowingly cause the death of Terrell Paynes by shooting Terrell Paynes with a deadly weapon, namely a firearm and the murder of Kiara Jackson and Demarquise Edwards and Terrell Paynes was committed in furtherance of the conspiracy to commit robbery and was an offense that should have been anticipated by the defendant as a result of carrying out the conspiracy to commit robbery then you will find the defendant guilty of capital murder, as charged in the indictment.

We consider next the state of the evidence on whether Fields conspired to commit a robbery.

22

*The state of the evidence*

The state of the evidence confirmed for the jury that Fields, Brooks, and Bell intended a robbery.

The State asked for a coconspirator instruction under Section 7.02(b), noting evidence that Fields, Brooks, and Bell were at the Arbor Court apartment complex two days before the murder, Brooks came back one day before the murder, and all three were seen on the premises on the day of the murder by multiple witnesses. They were seen wearing dark clothes before the gun shots. Then, witnesses saw three people matching that description running through the apartment complex just after the gunshots.

In Fields's recorded statements to the police, which were played for the jury, Fields described an intended robbery. While he might have thought his efforts to limit his role to that of getaway driver were helping his case, he clearly described knowledge of an intended armed robbery. Fields spelled out in his statement to the police his intent and described the task well enough to confirm it was, indeed, a robbery. For example, after being confronted with allegation that he went over to the apartment with Brooks and Bell to rob the man of drugs and initially denying any involvement, Fields eventually admitted that he was there but was not in the house. He said he did not know anything about anyone getting shot. They only asked him to drive. He was asked what Brooks and Bell told him was going to

happen. Fields responded that they were going to rob the place. He clarified, that meant rob the person who sells the drugs. Fields was asked what they were going to get. He responded, "Whatever they could get, I guess." Fields was asked if they had guns. He responded that the other two had guns, indicating that he did not have one as well.

After several minutes of questions, the police officer asked whether Fields thought he was just going to drive the truck while the other two "were going to run a lick on the dope house." Fields responded, "That's all I thought, sir. I didn't know that any of this was going to happen." Later, the officer asked about the three men going to the apartment a few days earlier. The officer pressed that Fields knew he was going to participate in a robbery, which meant that the earlier visit was to evaluate the location in preparation for the robbery. Fields responded that he would "guess so."

Later, the police officer asked about Brooks and Bell approaching Fields when it was time to go to the apartment. Fields said it was just 15 minutes before. The officer asked what Brooks and Bell said they were going to do. Fields said, "Get the money." Then he added, "They took money and drugs."

A person commits the offense of robbery if, in the course of committing theft and with intent to obtain or maintain control of the property, he intentionally, knowingly, or recklessly causes bodily injury to another or intentionally or

knowingly threatens or places another in fear of imminent bodily injury or death. *See* TEX. PENAL CODE § 29.02(a). A person commits aggravated robbery if he commits robbery and he causes serious bodily injury to another or uses or exhibits a deadly weapon, among other possibilities. *See id.* § 29.03(a)(1–2).

The jury heard the audiotape of Fields's police interview. They heard him say that he knew Brooks and Bell intended to rob the drug dealer, he knew Brooks and Bell had guns, he knew that they intended to steal money from the drug dealer, and he knew that, under the plan they discussed, he was to drive the vehicle they would use to get to and leave the robbery.

### *Counsel's arguments*

In closing argument, Fields's counsel challenged the State's effectiveness of proving its alternative theory that Fields went into the apartment and was an active participant in the robbery that led to the three deaths, as a primary actor. In arguing that the State did not prove Fields's role as a primary actor, he agreed that they established his role in the uncharged offense of robbery:

> Now, I want to talk to you about my client's statement. I told you up front that he took responsibility for the robbery, for the aggravated robbery that he committed or was involved in. He told you in the tape, I mean, he basically says, I drove them over. They were going to get me some money. I didn't have a gun. There is no evidence, whatsoever, that anybody saw Kevoughn Fields with a gun at any time. We never discussed shooting anybody. I don't kill people, I think he said at one point. I wasn't in for that.

Counsel did not challenge party responsibility on the basis that Fields intended a robbery. He challenged whether there was evidence to support a conclusion that multiple murders should have been anticipated from the planned robbery. In fact, in discussing the strength of the evidence of the robbery, counsel said, "I mean, he is the only person who voluntarily gave a statement and accepted responsibility for driving them over there with the intent to rob the drank man." But then he pointed out a lack of evidence that Fields knew three people were in that apartment. The capital murder charge was based on this event resulting in multiple murders, not there being an underlying armed robbery. The defensive position was that Fields did not conspire to commit multiple murders or anticipate that there would be multiple murders. The group planned to rob a drug dealer. Nothing more. Counsel then indicated that Fields had been mischarged because he was charged with capital murder instead of robbery. In effect, Fields's closing argument conceded his role in conspiring to commit a robbery.

### *Taken together, the error was harmless*

Having considered the charge, the evidence, and counsel's argument, we conclude that the error was harmless under these facts. Fields admitted that he agreed to drive Brooks and Bell to the apartments to rob a drug dealer. He knew they had guns. He was part of the conspiracy to commit robbery with deadly weapons. There was no dispute for the jury to resolve with regard to whether this

26

was an intended robbery. The question for them, instead, was whether multiple murders should have been an anticipated result of the planned robbery.

Because there was no dispute about the intent to commit robbery, the omission of the elements of robbery from the charge was harmless. *Cf. Riley*, 447 S.W.3d at 925, 927 (holding that appellant not egregiously harmed by omission of elements of robbery from court's charge because "there appears to have been little room in the evidence for disagreement that robbery was the purpose of the visit to [the complainant] the night of his shooting," moreover, "the main defense strategy was to contest whether [the defendant] was present, not whether robbery was the purpose of the actions that night. And the question of his presence was not in serious doubt, given the evidence."). The jury had no need to evaluate the offense of robbery on an elemental basis to ensure that the State had established Fields's intent to help with the commission of the robbery because Fields's own statements admitted to conspiring to commit a robbery. The error in omitting the elements of robbery from the charge was harmless.

## Conclusion

Concluding that the trial court erred but that the error was harmless, we affirm.

Sarah Beth Landau
Justice

Panel consists of Justices Landau, Guerra, and Farris.

Publish. TEX. R. APP. P. 47.2(b).